CLINTON W. LUNSFORD, AND MARY ANN LUNSFORD, AS CO-ADMINISTRATORS OF THE ESTATES OF LINSAY ERIN LUNSFORD AND MAGGIE ROSE LUNSFORD, PLAINTIFFS v. LORI RENN, ADMINISTRATRIX OF THE ESTATE OF GUY C. AYSCUE, DECEASED; MICHAEL LEWIS DUNLAP, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS AN OFFICER OF THE TOWN OF FRANKLINTON POLICE DEPARTMENT; JOHN GREEN, IN HIS OFFICIAL CAPACITY AS AN OFFICER OF THE TOWN OF FRANKLINTON POLICE DEPARTMENT; RAY GILLIAM, IN HIS OFFICIAL CAPACITY AS CHIEF OF THE TOWN OF FRANKLINTON POLICE DEPARTMENT; AND THE TOWN OF FRANKLINTON, DEFENDANTS

No. COA09-1592

(Filed 5 October 2010)

**1. Appeal and Error— interlocutory order—partial summary judgment—certified by trial judge**

The Court of Appeals had jurisdiction to review a partial summary judgment in a wrongful death action arising from an automobile accident where the only remaining claim was against an estate and the trial court certified the summary judgment order pursuant to N.C.G.S. § 1A-1, Rule 54(b).

**2. Police Officers— high-speed chase—wrongful death action— no gross negligence**

The trial court properly granted summary judgment for an officer in his official capacity in a wrongful death action that

**LUNSFORD v. RENN**

[207 N.C. App. 298 (2010)]

arose from a high-speed chase where the evidence did not show that the officer acted in a wanton or reckless manner. Plaintiffs' evidence on gross negligence boiled down to the contention that the officer was reckless in continuing to pursue a driver whose dangerous driving began before the pursuit and who was a danger to the community whether pursued by police or not. Such a holding would all but preclude an officer's ability to pursue a suspect driving recklessly and attempting to evade police.

**3. Police Officers— high-speed chase—no gross negligence—police and town officials—not liable**

Summary judgment was properly granted for a police chief, a lieutenant, and the town in a wrongful death action that arose from a high-speed chase where there was no gross negligence in the chase itself.

**4. Cities and Towns— high-speed chase—wrongful death—town's insurance policy—not ambiguous**

Summary judgment was properly entered for a town and its police officers in a wrongful death claim arising from a high-speed chase where there was no ambiguity about the Town's insurance policy, despite plaintiffs' contentions.

**5. Immunity— police officers—high-speed chase—public official immunity**

A police officer was entitled to public official immunity in his individual capacity in a wrongful death action arising from a high-speed chase. Plaintiffs did not forecast evidence demonstrating that the officer acted maliciously, wantonly, or recklessly in his pursuit of a driver who was driving recklessly when the pursuit began.

Appeal by plaintiffs from order entered 8 June 2009 by Judge Shannon R. Joseph in Granville County Superior Court. Heard in the Court of Appeals 12 May 2010.

*Edmundson & Burnette, L.L.P., by James T. Duckworth, III, for plaintiff-appellants.*

*Frazier, Hill & Fury, R.L.L.P., by Torin L. Fury, for defendant-appellees.*

HUNTER, JR., Robert N., Judge.

LUNSFORD v. RENN

[207 N.C. App. 298 (2010)]

Clinton W. and Mary Ann Lunsford, as administrators of their daughters' estates (collectively "plaintiffs"), filed a wrongful death action against Officer Michael Dunlap, Lieutenant John Green, Police Chief Ray Gilliam, the Town of Franklinton, and the estate of Guy C. Ayscue ("Ayscue") after Linsay Erin and Maggie Rose Lunsford were killed in a head-on collision. At the time of the collision, Ayscue was attempting to evade arrest in his car, and Officer Dunlap, along with other law enforcement officers, was pursuing Ayscue in order to apprehend him.

The trial court granted summary judgment as to all defendants except Ayscue's estate[1] and denied all of plaintiffs' claims for gross negligence. As a result, the only claim remaining for trial is plaintiffs' claim against Ayscue's estate for negligence. After review, we agree with the trial court that there is no genuine issue of material fact on the issue of whether any defendants were grossly negligent, and we agree that defendants were entitled to judgment as a matter of law. Accordingly, we affirm the trial court's order.

## I. BACKGROUND

Plaintiffs forecasted the following evidence. On 1 December 2007, at approximately 2:30 p.m., Officer Dunlap of the Franklinton Police Department was flagged down by a clerk at Snacker's Convenience Store located at the intersection of Main Street and N.C. Hwy. 56 in Franklinton, North Carolina. The clerk brought the officer's attention to a car going through the adjacent intersection, and Officer Dunlap observed a gray 1988 Pontiac driving on the wrong side of the road as it went through a red light without stopping or slowing. After observing these misdemeanor offenses, Officer Dunlap decided to initiate a traffic stop, and he pulled out of the parking lot as he activated his blue lights on his K-9 Unit patrol car. At 2:33 p.m., Officer Dunlap notified Franklin County Communications ("Dispatch") that he was attempting to catch up to the Pontiac, and he provided the license plate number of the car to Dispatch. The K-9 Unit driven by Officer Dunlap lacked a top light rack, but it was fully marked as a Town of Franklinton Police vehicle; and it was equipped with an L.E.D. interior dash blue light bar, two red L.E.D. grill lights, clear corner strobe lights, "wig-wags" in the high beam headlights, and two L.E.D. blue lights on the side mirrors.

---

1. Officer Michael Dunlap, Lieutenant John Green, Police Chief Ray Gilliam, and the Town of Franklinton will be denominated collectively as "defendants" for the remainder of this opinion.

LUNSFORD v. RENN

[207 N.C. App. 298 (2010)]

The chase began within the town limits of Franklinton, and as the cars traveled west on N.C. Hwy. 56, they passed a residential neighborhood, a business, a church, and a shopping mall. Shortly after Officer Dunlap began pursuit, Lieutenant John Green of the Franklinton Police Department began following at a distance in his marked SUV to monitor radio traffic. At 2:35 p.m., Officer Dunlap advised Dispatch that he was chasing a white male driver, and the dispatcher responded that the same description fit the registered owner of the Pontiac at an address in Henderson, North Carolina. Throughout the chase, Officer Dunlap maintained radio contact with the dispatcher and Lieutenant Green.

The road contour of N.C. Hwy. 56 from Franklinton city limits to the Town of Wilton, in Granville County, was "very hilly" and "up and down," according to State Trooper D.J. Sinnema. Near the county line between Franklin and Granville Counties, Trooper Sinnema observed Officer Dunlap's pursuit of the Pontiac. In his deposition, Trooper Sinnema stated that he watched Officer Dunlap and the Pontiac crest a "bad hill" going "very fast." Trooper Sinnema's visual estimate of the chase's speed was between 80 and 90 m.p.h. Trooper Sinnema caught only a glance of Officer Dunlap and the Pontiac as they passed him, but he estimated that Officer Dunlap was following only one car length behind the Pontiac. Shortly after the chase passed by Trooper Sinnema, two cars were run off the road by the Pontiac.

The Pontiac ran several more cars off the road before entering the Town of Creedmoor. After the Pontiac entered the city limits, Officer Ted Frazier of the Creedmoor Police Department joined the chase. As Officer Frazier was heading east on N.C. Hwy. 56, the Pontiac and Officer Dunlap's vehicle passed westbound traffic by entering the eastbound lane. Officer Frazier had to pull his vehicle to the side of the road to avoid being hit, and after the chase passed him, he turned around to follow as well. Officer Frazier testified in his deposition that traffic at the time was "very heavy" due to a Christmas parade which took place earlier in the day. As a result of the increased volume of cars on the road, the Pontiac, as well as Officer Dunlap's vehicle, were weaving in and out of the westbound lane, the left turn lane, and the eastbound lane. Officer Frazier visually estimated the speed of the chase to be between 90 and 100 m.p.h., and his speed radar registered the speed of the vehicles at 103 m.p.h. Officer Frazier followed the chase as it "zigzagged" in and out of the heavy traffic, and he advised a dispatcher that "if the vehicles did not slow down, they would kill someone."

Trooper Harold Councilman encountered the chase in Creedmoor at the intersection of N.C. Hwy. 56 and N.C. Hwy. 50 (Main St.) as he was heading east on N.C. Hwy. 56. After Trooper Councilman turned around to head west on N.C. Hwy. 56 to assist, he lost sight of the chase. Trooper Councilman eventually discovered that the chase had turned north onto N.C. Hwy. 15. To catch up to the Pontiac and Officer Dunlap, Trooper Councilman drove approximately 120 m.p.h., and he estimated the speed of the chase during his pursuit to be about 90 m.p.h. Trooper Councilman obtained visual contact with the chase about a half a mile before the collision eventually occurred. This last portion of road in the chase contained three hills, each of which prevented a driver going north from observing southbound traffic until the crest of the hill.

Near the top of the third hill, the Pontiac "jerked" left of the centerline to pass another vehicle headed north, and Officer Dunlap followed the Pontiac across the centerline, continuing to chase. A split second after the Pontiac crossed the centerline, Trooper Councilman watched it collide head-on with another car coming south. Officer Dunlap swerved hard to the right to avoid also being part of the collision with the Pontiac and eventually came to rest in the ditch 297 feet from the point of leaving the roadway. Linsay Lunsford, Maggie Lunsford, and the driver of the Pontiac died in the collision. The identification of the driver of the Pontiac was later confirmed to be the registered owner of the car, Ayscue.

Plaintiffs filed a wrongful death action on 14 May 2008 against defendants and Ayscue's estate. The complaint contained causes of action against Officer Dunlap in his official capacity, Lieutenant Green in his official capacity, Ray Gilliam in his official capacity, and the Town of Franklinton. On 15 January 2009, plaintiffs moved to amend their complaint to implead Officer Dunlap individually as well as in his official capacity. On 9 March 2009, the Honorable Henry W. Wright entered an order granting plaintiffs' motion to implead Officer Dunlap individually. On 1 May 2009, defendants filed a motion for summary judgment, which was granted on 8 June 2009 by the Honorable Shannon R. Joseph. On 10 June 2009, the trial court, pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, certified the summary judgment order as a final judgment. Plaintiffs timely filed notice of appeal to this Court on 30 June 2009.

## II. ANALYSIS

### A. Jurisdiction and Standard of Review

[1] We note that this appeal is interlocutory given that plaintiffs' cause of action against Ayscue's estate is still pending in the trial court. *Embler v. Embler*, 143 N.C. App. 162, 164, 545 S.E.2d 259, 261 (2001) (orders made during the pendency of an action not disposing of the entire controversy are interlocutory). "Generally, there is no immediate right to appeal from interlocutory orders and judgments." *Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, where the trial court certifies an interlocutory order under N.C.R. Civ. P. 54(b) (2010), jurisdiction in this Court is proper. *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) ("When the trial court certifies its order for immediate appeal under Rule 54(b), appellate review is mandatory."); *see Oestreicher v. Stores*, 290 N.C. 118, 127, 225 S.E.2d 797, 803 (1976) (the trial court is a "dispatcher" and determines "the appropriate time when each 'final decision' upon 'one or more but less than all' of the claims in a multiple claims action is ready for appeal") (citation omitted); *Trull v. Central Carolina Bank*, 117 N.C. App. 220, 450 S.E.2d 542 (1994) (jurisdiction is proper where summary judgment is granted to one defendant but fewer than all defendants on all of the plaintiff's claims), *aff'd in part and disc. review improvidently allowed in part*, 347 N.C. 262, 490 S.E.2d 238 (1997).

In this case, summary judgment was granted in favor of defendants, and the trial court certified the summary judgment order pursuant to N.C.R. Civ. P. 54(b) (2010). Since the only claim remaining is against Ayscue's estate, it is apparent that the trial court's order is "a final judgment as to one . . . but fewer than all of . . . [the] parties," and we agree that there is "no just reason for delay." N.C.R. Civ. P. 54(b). Jurisdiction in this Court is accordingly proper under Rule 54(b).

"We review orders granting summary judgment *de novo*." *Self v. Yelton*, 201 N.C. App. 653, 658, 688 S.E.2d 34, 37 (2010). Under *de novo* review, this Court " 'considers the matter anew and freely substitutes its own judgment for that of the [trial court].' " *Stacy v. Merrill*, 191 N.C. App. 131, 134, 664 S.E.2d 565, 567 (2008) (citation omitted). Summary judgment is proper when, viewed in the light most favorable to the nonmovant, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c) (2010); *see S.B. Simmons Landscaping & Excavating, Inc. v.*

*Boggs,* 192 N.C. App. 155, 163-64, 665 S.E.2d 147, 152 (2008). The burden rests initially on the moving party to show that there exists no genuine issue of material fact. *Self,* 201 N.C. App. at 658, 688 S.E.2d at 38. "If a moving party shows that no genuine issue of material fact exists for trial, the burden shifts to the nonmovant to adduce specific facts establishing a triable issue." *Id.*

## B. Gross Negligence[2]

[2] Plaintiffs argue that the evidence, viewed in the light most favorable to them, shows that there is a genuine issue of material fact as to whether defendants were grossly negligent in pursuing Ayscue. Applying the factors outlined in *Norris v. Zambito,* 135 N.C. App. 288, 520 S.E.2d 113 (1999) and *Bullins v. Schmidt,* 322 N.C. 580, 369 S.E.2d 601 (1988), plaintiffs contend that the combination of the high vehicle speeds, hilly road terrain, traffic concentration, Officer Dunlap's close following distance, population density, and duration of the chase create an issue for trial on their claim for gross negligence. We do not agree.

"Our Supreme Court has held that 'in any civil action resulting from the vehicular pursuit of a law violator, the gross negligence standard applies in determining the officer's liability.' " *Eckard v. Smith,* 166 N.C. App. 312, 318, 603 S.E.2d 134, 139 (2004) (citation omitted), *aff'd,* 360 N.C. 51, 619 S.E.2d 503 (2005). Gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Bullins,* 322 N.C. at 583, 369 S.E.2d at 603, *abrogated on other grounds, Parish v. Hill,* 350 N.C. 231, 513 S.E.2d 547 (1999). " 'An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.' " *Yancey v. Lea,* 354 N.C. 48, 52, 550 S.E.2d 155, 157 (2001) (citation omitted).

Our "Courts have discussed several factors as relevant to the issue of whether the conduct of a law enforcement officer engaged in pursuit of a fleeing suspect meets the grossly negligent standard." *Norris,* 135 N.C. App. at 294, 520 S.E.2d at 117. These factors, although not dispositive standing alone, include: (1) the reason for the pursuit; (2) the probability of injury to the public due to the offi-

---

2. In addition to the addressed issues, plaintiffs initially assign error to the trial court's admission of Exhibit 4 of the affidavit of defendants' expert Jon Blum. Exhibit 4 is a prepared video of the pursuit route. Plaintiffs allege the video inaccurately reflects the pursuit route at the time of the chase and is, therefore, irrelevant. However, plaintiffs do not argue this original assignment of error in brief, and in accordance with N.C.R. App. P. 28 (2010), it is deemed abandoned.

cer's decision to begin and maintain pursuit; and (3) the officer's conduct during the pursuit.[3] *Id.* at 294-95, 520 S.E.2d at 117.

Under the first factor, when examining the reason for a pursuit, we apply the following:

> If the officer was attempting to apprehend someone suspected of violating the law, the police officer would fall squarely within the standard of care established by the Supreme Court's construction of G.S. § 20-145. . . . It is also relevant to consider whether the suspect was known to police and could be arrested through means other than apprehension via a high speed chase; . . . or whether the fleeing suspect presented a danger to the public that could only be abated by immediate pursuit.

*Id.* at 294, 520 S.E.2d at 117 (citations omitted). Under the second factor regarding the public's safety as a result of an officer's decision to begin and continue pursuit, we bear the following considerations in mind:

> [T]he time of day or night when the pursuit occurred, the location of the pursuit (a highway, residential neighborhood, rural area, or within the city limits), population of the area, type of terrain (hilly or curvy roads), traffic conditions, presence of other vehicles on the road, posted speed limits, road conditions, weather conditions, duration of pursuit, and length of pursuit[.]

*Id.* at 294-95, 520 S.E.2d at 117 (citations omitted). Under the third factor as to the officer's conduct during the chase, we observe

> whether the officer used emergency lights, sirens and headlights, collided with any person, vehicle or object, kept his or her vehicle under control, followed relevant departmental policies regarding chases, violated generally accepted standards for police pursuits, and what the officer's speed was during the pursuit.

*Id.* at 295, 520 S.E.2d at 117.

In this appeal, plaintiffs have expounded in detail how the facts surrounding this tragedy support a question of gross negligence. Viewing the evidence in the light most favorable to plaintiffs, the record shows that, at times, the chase reached tremendous speeds in

---

3. Plaintiffs claim that our Supreme Court announced a "Rules of the Road" factor in *Bullins*. However, a reading of *Bullins* reveals no such new factor, and to the extent the adherence to traffic rules is discussed in *Bullins*, we address such actions herein as part of the third factor.

the midst of heavy traffic. Ayscue ran several cars off the road while being pursued, and the speeds reached during the chase were dangerous due to the many curves and hills encountered—particularly near the point of the collision. The chase lasted about fourteen minutes, and covered approximately 18.2 miles. Several portions of those miles included densely populated neighborhoods and commercial sectors of Franklinton and Creedmoor. Officer Dunlap, at some points during his pursuit, followed very close to Ayscue's vehicle. Moreover, Officer Dunlap violated the Franklinton Police Department policy banning high speed pursuits of fleeing suspects, because for most of the chase, the speed of the vehicles was more than twenty miles an hour over the posted speed limit. Officer Dunlap crossed the centerline on several occasions, and for at least several portions of the pursuit, Officer Dunlap followed very close to Ayscue's vehicle.

Even though this evidence ostensively seems to satisfy many of the considerations this Court examines on appeal in these cases, it fails to raise a genuine issue that Officer Dunlap acted with a reckless indifference to the safety of the public—the lowest threshold for wanton conduct. Plaintiffs do not dispute that approximately a half hour before Officer Dunlap began his pursuit, David Watson, a Franklinton resident, called 911 due to Ayscue's erratic and dangerous driving within the town limits of Franklinton. Ayscue was running red lights, driving at high speeds, swerving across the centerline, passing other vehicles in dangerous circumstances, rapidly accelerating, squealing his tires, and skidding as he maneuvered turns. Though Officer Dunlap was not responding to Mr. Watson's 911 call when he began his pursuit, clearly Ayscue was driving in a menacing manner prior to his involvement. Ayscue's driving was obviously a concern for the clerk at Snacker's Convenience Store, who took the time to alert Officer Dunlap to Ayscue's reckless indifference to the traffic laws.

Ayscue's behavior before being pursued underscores the reason we give great deference to a law enforcement officer's decision to initiate and maintain pursuit of a suspect. Even plaintiffs' evidence supports the conclusion that, very early in the chase, Ayscue was driving in a very dangerous manner—as he had been for at least half an hour before Ayscue encountered Officer Dunlap. Officer Dunlap observed right away that Ayscue was a risk to himself and the public. Officer Dunlap knew that a white male was driving the car, but he did not discover the identity of the driver until Ayscue had already brought the chase to its tragic finale. In light of the entire record, even if Officer Dunlap had not initiated pursuit, it is not entirely improbable that the same result could have occurred.

LUNSFORD v. RENN

[207 N.C. App. 298 (2010)]

Plaintiffs' evidence highlights the dangers encountered throughout the pursuit, but it does not show that Officer Dunlap acted in a manner that was wanton or reckless. Ayscue's culpability aside, the evidence offered by plaintiffs as to the above factors on gross negligence boils down to one primary contention: Officer Dunlap was reckless by continuing to pursue Ayscue when Ayscue drove in a dangerous manner. We decline to adopt this principle. When drivers are driving in a dangerous manner, they are a danger to the community whether being pursued by police or not. To hold that there is a genuine issue that Officer Dunlap was reckless in these circumstances would all but preclude an officer's ability to pursue a suspect driving recklessly and attempting to evade police, because for an officer to chase such an individual would open the officer to potential liability. Officer Dunlap was merely attempting to mitigate an already precarious situation by getting Ayscue off the road. Ayscue refused to comply. Without at least some evidence showing that Officer Dunlap was reckless in trying to get Ayscue to pull off the road, plaintiffs cannot show that Officer Dunlap's conduct was grossly negligent.

This conclusion has plenary support from the existing case law in this State. *See Bullins*, 322 N.C. 580, 369 S.E.2d 601 (no gross negligence where officer conducted a pursuit which lasted 14 minutes, spanned 18 miles, reached speeds of 100 m.p.h., and ended in a fatal head-on collision); *Parish*, 350 N.C. 231, 513 S.E.2d 547 (no gross negligence where officer reached speeds of 130 m.p.h. during pursuit which took place at 2:00 a.m.); *Young v. Woodall*, 343 N.C. 459, 463, 471 S.E.2d 357, 360 (1996) (no gross negligence when officer did not activate his blue lights/siren, traveled at high speeds through an intersection, and did not notify his superiors of his intention to pursue, all of which violated procedure); *Bray v. N.C. Dep't of Crime Control and Pub. Safety*, 151 N.C. App. 281, 284, 564 S.E.2d 910, 912-13 (2002) (no gross negligence where state trooper collided with an oncoming vehicle after losing control due to excessive speed of pursuit). Thus, since plaintiffs have failed to show that there is a genuine issue of material fact that Officer Dunlap was grossly negligent, the trial court properly granted summary judgment to Officer Dunlap in his official capacity.

[3] As to the gross negligence of Officer Dunlap's superiors, Lieutenant Green and Chief Gilliam, plaintiffs appear to argue only that these officers should have halted the pursuit at some point prior to the collision. However, because we decline to find gross negligence in the pursuit itself as discussed above, we similarly decline to hold that Lieutenant Green and Chief Gilliam were grossly negligent. Furthermore, since the

claim against the Town of Franklinton is based on the doctrine of *respondeat superior*, summary judgment in favor of the town was proper given that no officers were grossly negligent in executing their duties. This assignment of error is overruled.[4]

### C. Sovereign Immunity

[4] Plaintiffs contend that the trial court erred by granting summary judgment to defendants on the grounds of sovereign immunity. Plaintiffs allege that defendants are not covered by the doctrine of sovereign immunity due to ambiguities in the Town of Franklinton's insurance policy. We do not agree.

"As a general rule, the doctrine of governmental, or sovereign immunity bars action against, *inter alia*, the state, its counties, and its public officials sued in their official capacity." *Herring v. Winston-Salem/Forsyth County Bd. of Educ.*, 137 N.C. App. 680, 683, 529 S.E.2d 458, 461 (2000) (citation omitted). The doctrine applies when the entity is being sued for the performance of a governmental function. *Id.* " '[S]uits against public officials are barred by the doctrine of governmental immunity where the official is performing a governmental function, such as providing police services.' " *Parker v. Hyatt*, 196 N.C. App. 489, 493, 675 S.E.2d 109, 111 (2009) (citation omitted). A town or municipality may waive sovereign immunity through the purchase of liability insurance. *Satorre v. New Hanover Cty. Bd. of Comm'rs*, 165 N.C. App. 173, 176, 598 S.E.2d 142, 144 (2004). However, " '[i]mmunity is waived only to the extent that the [municipality] is indemnified by the insurance contract from liability for the acts alleged.' " *Id.* (quoting *Combs v. Town of Belhaven*, 106 N.C. App. 71, 73, 415 S.E.2d 91, 92 (1992)). "A governmental entity does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy." *Patrick v. Wake Cty. Dep't of Human Servs.*, 188 N.C. App. 592, 596, 655 S.E.2d 920, 923 (2008).

The Town of Franklinton's insurance policy states in relevant part:

### H. Governmental Immunity

Because you are a public institution, you may be entitled to governmental immunity. This policy does not constitute a waiver of governmental immunity to which you are entitled.

---

4. Because we conclude that there was no gross negligence on these grounds, we decline to address plaintiffs' further arguments that: (1) the trial court erred in granting summary judgment to defendants on the grounds of superceding and insulating negligence, and (2) summary judgment was not proper pursuant to N.C. Gen. Stat. § 20-145 (2009).

The insurance policy also contains a "Sovereign Immunity Non-Waiver Endorsement" modifying the town's policy, which reads:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART COMMERCIAL AUTO COVERAGE FORM

LAW ENFORCEMENT LIABILITY COVERAGE PART PUBLIC OFFICIALS' LIABILITY COVERAGE PART EDUCATORS LEGAL LIABILITY COVERAGE PART

In consideration of the premium charged, it is hereby agreed and understood that the policy(ies) coverage part(s) or coverage form(s) issued by us provide(s) no coverage for any "occurrence", "offense", "accident", "wrongful act", claim or suit for which any insured would otherwise have an exemption or no liability because of sovereign immunity, any governmental tort claims act or laws, or any other state or federal law. Nothing in this policy, coverage part or coverage form waives sovereign immunity for any insured.

Plaintiffs argue that these portions of the insurance policy are patently ambiguous because: (1) there is no "Commercial Auto Coverage Form," and (2) the blanket statement in section H is not specific enough. Contrary to plaintiffs' characterization of the Town of Franklinton's insurance policy, we do not believe the insurance policy is ambiguous. Plaintiffs admit that section H applies to the entire insurance policy, and though the language therein is not as specific, we agree with defendants that this statement is substantially similar to the policy approved in *Patrick*. The policy in that case provided:

This policy is not intended by the insured to waive its governmental immunity as allowed by North Carolina General Statutes Sec. 153A-435. Accordingly, subject to this policy and the Limits of Liability shown on the Declarations, this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defenses is [sic] asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable.

*Patrick*, 188 N.C. App. at 596, 655 S.E.2d at 923 (emphasis omitted).

Since the record shows that defendants have not waived governmental immunity through their insurance policy, summary judgment was proper on this issue. This assignment of error is overruled.

### D. Public Official Immunity

[5] Plaintiffs argue that the trial court erred by granting summary judgment to Officer Dunlap in his individual capacity, because the evidence shows that Officer Dunlap's actions were malicious or wanton. We do not agree.

" 'As a general rule it is presumed that a public official in the performance of his official duties "acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." ' " *Greene v. Town of Valdese*, 306 N.C. 79, 82, 291 S.E.2d 630, 632 (1982) (citations omitted). " 'Police officers ∴ . . are public officials.' " *Strickland v. Hedrick*, 194 N.C. App. 1, 10, 669 S.E.2d 61, 67 (2008). "Accordingly, 'a public official engaged in the performance of governmental duties involving the exercise of judgment and discretion may not be held personally liable . . . unless it be alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties.' " *Id.* (citations omitted). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." In *Re Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890-91 (1984) (citation omitted).

As discussed at length above, plaintiffs have not forecast evidence which demonstrates that Officer Dunlap acted maliciously, wantonly, or recklessly in his pursuit of Ayscue. Accordingly, Officer Dunlap, in his individual capacity, is entitled to public official immunity. This assignment of error is overruled.

### III. CONCLUSION

Based on the foregoing, we conclude that summary judgment was properly entered as to Officer Michael Dunlap in his official and individual capacities, Lieutenant John Green, Police Chief Ray Gilliam, and the Town of Franklinton. Accordingly, the order of the trial court is

Affirmed.

Judges McGEE and STROUD concur.