Stephanie YARBROUGH, and
Stephanie Williams,
Plaintiffs,

v.

EAST WAKE FIRST CHARTER SCHOOL, a/k/a East Wake Academy, and Michael Lester, Defendants.

No. 5:14–CV–188–D.

United States District Court,
E.D. North Carolina,
Western Division.

Signed Feb. 24, 2015.

Denise S. Cline, Law Offices of Denise Smith Cline, PLLC, Raleigh, NC, Kelly Tillotson Ensslin, Law Office of Kelly Tillotson Ensslin, Charlotte, NC, for Plaintiffs.

Dan McCord Hartzog, Jr., Katie Weaver Hartzog, Cranfill Sumner & Hartzog, LLP, Raleigh, NC, for Defendants.

## ORDER

JAMES C. DEVER III, Chief Judge.

On February 26, 2014, Stephanie Yarbrough and Stephanie Williams ("plaintiffs") sued East Wake First Charter School a/k/a East Wake Academy ("EWA") and Michael Lester, individually and in his official capacity as President of the EWA Board of Directors (collectively, "defendants") [D.E. 1–2]. Plaintiffs asserted fifteen claims under state and federal law. On March 27, 2014, defendants timely removed the action from Wake County Superior Court to this court [D.E. 1]. See 28 U.S.C. §§ 1331, 1441(b). On April 29, 2014, defendants filed a partial motion to dismiss [D.E. 8] with a supporting memorandum [D.E. 9]. On June 30, 2014, plaintiffs responded in opposition [D.E. 14] and voluntarily dismissed all claims against Lester in his official capacity and ten claims against Lester in his individual capacity [D.E. 13]. On December 23, 2014, defendants replied [D.E. 26]. As explained below, the court grants defendants' partial motion to dismiss.

## I.

EWA is a North Carolina nonprofit corporation that operates a charter school in Zebulon, North Carolina. Compl. [D.E. 1–2] ¶ 4.[1] Michael Lester is the president of the EWA Board of Directors ("EWA Board") and held that position during the relevant time period. Id. ¶ 10.

Brandon Smith was the headmaster of and head of human resources for EWA until March 2012. Id. ¶ 19. Before working at EWA, Brandon Smith worked for Durham County Public Schools ("DCPS"). When Smith worked for DCPS, a DCPS

---

1. In analyzing defendants' motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations in plaintiffs' complaints as true. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

teacher sued Smith and DCPS for Smith's alleged sexual harassment of the teacher. *Id.* ¶¶ 11–12. The lawsuit was pending and a matter of public record when EWA hired Smith. *Id.* ¶ 11. During Smith's employment with EWA, an unknown person placed copies of the federal court's decision in the DCPS harassment case, in which the court refused to dismiss some of the plaintiff's claims, in the mailboxes of some EWA employees. *Id.* ¶ 19.

In 2005, after Smith started working for EWA, a female employee who worked in close physical proximity to Smith complained to Lester that Smith had "engaged in unwanted touching of her." *Id.* ¶ 14. Lester did not tell the EWA Board about this complaint but met with the employee at another board member's home. *Id.* ¶ 16. Lester did not formally investigate the employee's complaint. *Id.* Instead, Lester told the employee that she could move to a different location at EWA to avoid Smith. *Id.* This move occurred almost a year later. *Id.* ¶ 17. The EWA Board took no disciplinary actions against Smith and did not provide sexual harassment training to Smith or EWA employees. *Id.* ¶ 18.

In the fall of 2006, Stephanie Yarbrough started working as a substitute teacher at EWA. *Id.* ¶ 8. By October 2006, she was a full-time physical education teacher assistant at EWA. *Id.* In 2010, Stephanie Williams started working at EWA as a fifth-grade teacher. *Id.* ¶ 7. Between 2010 and 2012, Smith made numerous unwanted and inappropriate sexual comments to Yarbrough and to Williams. *Id.* ¶¶ 26–31, 33–39. Smith also made unwelcome and inappropriate physical contact with Yarbrough and with Williams on multiple occasions. *Id.* ¶¶ 27, 30, 35–36. In December 2011, Smith told Williams that she would not be receiving a longevity raise, and later he told her, in reference to her not receiving

the raise, "You know you should have done what I asked you to do." *Id.* ¶ 30.

In November 2011, Yarbrough and Williams raised their concerns about Smith's conduct with other EWA employees. *Id.* ¶¶ 32, 40. In early 2012, some EWA Board members learned of Smith's alleged sexual harassment, and two board members raised the issue at a board meeting. *Id.* ¶ 41. The EWA Board took no actions at the meeting, and Smith asked the Board to sanction the two board members who raised the issue. *Id.* ¶ 42.

Following this board meeting, Yarbrough and Williams submitted written complaints to Lester. *Id.* ¶ 43. After Lester reviewed their complaints, Lester determined that the two board members had inappropriately raised the harassment issue. *Id.* ¶ 44. As a result, Lester sanctioned them, per Smith's request. *Id.* Lester conducted another board meeting and did not address plaintiffs' complaints. *Id.* ¶ 45. Lester also showed plaintiffs' written complaints to Smith, and Smith took actions that led to plaintiffs' inability to access their school email for some period of time. *Id.*

Later, the EWA Board held a special meeting to hear statements from plaintiffs and Smith. *Id.* ¶¶ 45–46. Following this meeting, the EWA Board took no immediate disciplinary action against Smith. *Id.*

In February 2012, Yarbrough and Williams filed a police report with the Zebulon Police Department for assault and battery against Smith. *Id.* ¶ 47. Smith was charged with two counts of assault on a female and two counts of sexual battery. *Id.* In March 2012, EWA terminated Smith's employment. *Id.* ¶ 9. After Smith's termination, EWA conducted sexual harassment training, which EWA management suggested "was the fault of Williams and Yarbrough." *Id.* ¶ 56. EWA also organized some events during

school hours and on school property to support Smith. *Id.* ¶ 55. In October 2013, a Wake County jury convicted Smith of sexual battery and assault on Yarbrough. *Id.* ¶ 58.

On February 26, 2014, plaintiffs filed suit against EWA and Lester in Wake County Superior Court. Plaintiffs alleged assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, sexual harassment under Title VII, negligent hiring, negligent supervision and retention, and violations of the North Carolina Constitution. *Id.* ¶¶ 59–180. Defendants timely removed the action to this court.

## II.

■ The court first considers defendants' motion to dismiss plaintiffs' North Carolina tort claims against EWA for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2). *See* Fed.R.Civ.P. 12(b)(1), (2); Mot. Dismiss [D.E. 8] 1–2. When analyzing North Carolina law, this court must predict what the Supreme Court of North Carolina would do if faced with the issue. In doing so, the court may consider cases from the Supreme Court of North Carolina, the North Carolina Court of Appeals, treatises, and the practices of other states. *See, e.g., Twin City Fire Ins. Co. v. Ben Arnold–Sunbelt Beverage Co. of S.C.,* 433 F.3d 365, 369 (4th Cir.2005); *Teague v. Bakker,* 35 F.3d 978, 991 (4th Cir.1994).

■ Under North Carolina law, governmental immunity presents a question of jurisdiction. *See, e.g., Medina v. United States,* 259 F.3d 220, 223–24 (4th Cir.2001); *Frye v. Brunswick Cnty. Bd. of Educ.,* 612 F.Supp.2d 694, 701 (E.D.N.C.2009); *Myers v. McGrady,* 360 N.C. 460, 465 n. 2, 628 S.E.2d 761, 765 n. 2 (2006); *Teachy v. Coble Dairies, Inc.,* 306 N.C. 324, 326–28, 293 S.E.2d 182, 184 (1982). The Supreme Court of North Carolina, however, has not

resolved whether governmental immunity presents a defense to subject-matter jurisdiction or personal jurisdiction. *See Myers,* 360 N.C. at 465 n. 2, 628 S.E.2d at 765 n. 2. Thus, the court evaluates defendants' motion to dismiss for lack of jurisdiction under both standards.

### A.

■ Under Rule 12(b)(1), a plaintiff must prove subject-matter jurisdiction. *See, e.g., Richmond, Fredericksburg & Potomac R.R. v. United States,* 945 F.2d 765, 768 (4th Cir.1991). A court regards "the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir.1999) (quotation omitted). "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact [concerning jurisdiction] exists." *Richmond,* 945 F.2d at 768.

■ Under Rule 12(b)(2), a plaintiff must prove personal jurisdiction. *See, e.g., Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir.1993). If the court resolves the motion on the basis of papers alone, a plaintiff must show only a prima facie case of personal jurisdiction. *Id.* at 60. The court "must draw all reasonable inferences arising from the [plaintiff's] proof, and resolve all factual disputes, in the plaintiff's favor." *Id.*

### B.

■ Initially, the court analyzes whether EWA, as a charter school, enjoys governmental immunity. Under North Carolina law, public schools "may be sued only when and as authorized by statute." *Smith v. Hefner,* 235 N.C. 1, 6, 68 S.E.2d

783, 787 (1952); *see Benton v. Bd. of Educ. of Cumberland Cnty.*, 201 N.C. 653, 161 S.E. 96, 97 (1931) (recognizing the governmental immunity of public schools): *Seipp v. Wake Cnty. Bd. of Educ.*, 132 N.C.App. 119, 121, 510 S.E.2d 193, 194 (1999) ("A county or city board of education is a governmental agency, and therefore is not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority."); *Lindler v. Duplin Cnty. Bd. of Educ.*, 108 N.C.App. 757, 761, 425 S.E.2d 465, 468 (1993). By statute, charter schools are public schools. *See, e.g.*, N.C. Gen.Stat. § 115C–218.15(a) ("A charter school that is approved by the State shall be a public school within the local school administrative unit in which it is located."); N.C. Gen.Stat. § 115C–218.(a)(5) (stating that a charter school is meant to "[p]rovide parents and students with expanded choices in the types of educational opportunities that are available within the public school system"); N.C. Gen.Stat. § 115C–218.25 (subjecting charter schools to the Public Records Act and Open Meetings Law); N.C. Gen.Stat. § 115C–218.30 (requiring a charter school to submit to financial audits, audit procedures, and audit requirements adopted by the State Board of Education). The North Carolina Supreme Court and Court of Appeals have not addressed whether charter schools enjoy governmental immunity. This court, however, predicts that the Supreme Court of North Carolina would recognize that charter schools, as statutorily-defined public schools, enjoy the same governmental immunity as traditional public schools. *Cf.* Superior Ct. Order [D.E. 8–8] 1 (granting EWA's motion to dismiss in a related case because "EWA is entitled to governmental immunity" concerning North Carolina tort claims).

In opposition to this conclusion, plaintiffs contend that N.C. Gen.Stat. § 115C–218.20 does not recognize or confer governmental immunity upon charter schools, and that this court should not "expand the scope of sovereign immunity" by extending it to charter schools when the legislature has failed to do so. *See* Pls.' Mem. Opp'n Mot. Dismiss [D.E. 14] 6–7. Specifically, plaintiffs argue that a close reading of section 115C–218.20 and its earlier drafts demonstrates a lack of legislative intent to establish governmental immunity for charter schools. *Id.* 7. In support, plaintiffs cite three things. First, plaintiffs cite the express language of section 115C–218.20, which states, in part, that "*[a]ny* sovereign immunity of the charter school ... is waived to the extent of indemnification by insurance." N.C. Gen.Stat. § 115C–218.20(a) (emphasis added). Plaintiffs claim that the use of the word "any" rather than "the" shows a lack of legislative intent to establish governmental immunity for charter schools. *See* Pls.' Mem. Opp'n Mot. Dismiss 7. Second, plaintiffs contend that an earlier draft of section 115C–218.20 shows that the legislature considered and rejected governmental immunity for charter schools. *See id.* 7–8. Third, plaintiffs argue that section 115C–218.20's title, "Civil liability and insurance requirements," suggests legislative intent not to grant charter schools governmental immunity. *See id.* 8–9; N.C. Gen.Stat. § 115C–218.20.

The court rejects plaintiffs' argument. As plaintiffs concede, governmental immunity in North Carolina is a "judge-made doctrine" that the legislature later recognized by statute. *See Steelman v. City of New Bern*, 279 N.C. 589, 594, 184 S.E.2d 239, 242 (1971); *cf.* Pls.' Mem. Opp'n Mot. Dismiss 7. As such, this doctrine "is firmly established in [North Carolina] law today, and ... has been recognized ... as the public policy of the State." *Steelman*, 279 N.C. at 594, 184 S.E.2d at 242. In view of the statutory scheme and the policy reasons underpinning North Carolina's gov-

ernmental immunity doctrine for public schools, this court predicts that the Supreme Court of North Carolina would hold that charter schools enjoy governmental immunity.

Plaintiffs' contrary arguments are unpersuasive. As for the express language of section 115C–218.20, the legislature's use of "any" suggests, at most, an implicit command to the state courts to determine whether governmental immunity exists. Furthermore, plaintiffs misread section 115C–218.20's legislative draft. The draft states:

> No civil liability shall attach to any *chartering entity,* to the State Board of Education, or to any of their members or employees, individually or collectively, for any acts or omissions of the charter school. In the event a charter school has not elected total independence from the local board of education under subsection (e) of this section, the immunity established by this subsection shall be deemed to have been waived.
>
> . . .

H.B. 955, 1995 Gen. Assemb., Reg. Sess. (N.C.1995) (proposed section 115C–238.29F(c)(2)). The immunity described in this draft subsection references the governmental immunity of a chartering entity or the State Board of Education, not a charter school. Thus, the changes made in the final draft do not reflect an intent to abrogate a charter school's governmental immunity. If anything, the changes bolster the conclusion that the legislature intended to grant charter schools governmental immunity by adding language directly referencing a charter school's immunity. Lastly, although the title of an act may resolve "doubt[s] about the effect of [a] statute," *State v. Flowers,* 318 N.C. 208, 215, 347 S.E.2d 773, 778 (1986), there are no doubts here. Thus, the court rejects plaintiffs' argument concerning EWA's governmental immunity.

Having concluded that EWA enjoys governmental immunity, the court next considers whether EWA waived its immunity by purchasing liability insurance. "Any sovereign immunity of the charter school . . . is waived to the extent of indemnification by insurance." N.C. Gen. Stat. § 115C–218.20(A). North Carolina courts strictly construe statutes authorizing waiver of governmental immunity. *See, e.g., Frye,* 612 F.Supp.2d at 702; *Ripellino v. N.C. Sch. Bds. Ass'n, Inc.,* 158 N.C.App. 423, 428, 581 S.E.2d 88, 92 (2003); *Hallman v. Charlotte–Mecklenburg Bd. of Educ.,* 124 N.C.App. 435, 438, 477 S.E.2d 179, 181 (1996). As section 115C–218.20(a) states, a charter school's purchase of insurance does not waive governmental immunity. Rather, immunity is waived "only to the extent of indemnification by insurance." N.C. Gen.Stat. § 115C–218.20(a); *see Bullard v. Wake Cnty.,* 221 N.C.App. 522, 729 S.E.2d 686, 689 (2012); *Lunsford v. Renn,* 207 N.C.App. 298, 308, 700 S.E.2d 94, 100 (2010), *disc. rev. denied,* 365 N.C. 193, 707 S.E.2d 244 (2011); *Overcash v. Statesville City Bd. of Educ.,* 83 N.C.App. 21, 24–26, 348 S.E.2d 524, 527 (1986).

EWA purchased three different insurance policies for the relevant time period. *See* [D.E. 8–2–8–6]. Each policy contains a nonwaiver endorsement that states: "Because you are a public institution, you may be entitled to governmental immunity. This policy does not constitute a waiver of any governmental immunity to which you are entitled." [D.E. 8–2] 12; [D.E. 8–4] 9; [D.E. 8–5] 12. The policies also specify that "it is hereby agreed and understood that the policy(ies) . . . provide(s) no coverage for any . . . claim or suit for which any insured would otherwise have an exemption or no liability because of sovereign immunity. . . ." [D.E. 8–2] 13; [D.E. 8–4] 10; [D.E. 8–5] 13. Such endorsements preclude the waiver of governmental im-

munity because they limit the extent of coverage. *See, e.g., Lunsford,* 207 N.C.App. at 308–10, 700 S.E.2d at 100–01; *Wright v. Gaston Cnty.,* 205 N.C.App. 600, 606–08, 698 S.E.2d 83, 88–90 (2010); *Estate of Earley ex rel. Earley v. Haywood Cnty. Dep't of Soc. Servs.,* 204 N.C.App. 338, 342–44, 694 S.E.2d 405, 409–10 (2010); *Patrick v. Wake Cnty. Dep't of Human Servs.,* 188 N.C.App. 592, 596–97, 655 S.E.2d 920, 924 (2008). Accordingly, EWA did not waive its governmental immunity by purchasing liability insurance, and the court lacks jurisdiction over plaintiffs' tort claims against EWA.[2]

Next, plaintiffs argue that North Carolina appellate precedent upholding nonwaiver endorsements does not apply because that precedent involved municipalities, not charter schools. *See* Pls.' Mem. Opp'n Mot. Dismiss 9–15. In making this argument, plaintiffs suggest a statutory distinction between municipalities and traditional public schools, on one hand, and charter schools on the other. In support, plaintiffs note that municipalities and traditional public schools are not required to carry any liability insurance whereas charter schools must carry some form of liability insurance. *Compare* N.C. Gen.Stat. § 160A–485(a) ("Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance."), *and* N.C. Gen.Stat. § 115C–42 ("Any local board of education, by securing liability insurance as hereinafter provided, is hereby authorized and empowered to waive its governmental immunity from liability . . . ."), *with* N.C. Gen.Stat. § 115C–218.20(a) ("The board of directors [of a charter school] shall obtain at least the amount of and types of insurance required by these rules to be included in the charter.").

The court rejects plaintiffs' argument. Whether charter schools are permitted or required to carry liability insurance does not address whether a charter school's purchase of liability insurance waives its governmental immunity. Tellingly, section 115C–218.20 states that a charter school's governmental immunity "is waived to the *extent of indemnification* by insurance." N.C. Gen.Stat. § 115C–218.20(a) (emphasis added). Plaintiffs erroneously conflate the mere possession of insurance with actual coverage and indemnification under a specific insurance policy. Here, EWA's insurance policies exclude liability coverage for suits where EWA has governmental immunity, and (as discussed) North Carolina's appellate courts uniformly have upheld such nonwaiver provisions.

Although plaintiffs correctly note that North Carolina's appellate courts decided these cases in the context of voluntary insurance purchases, the distinction between mandatory insurance and voluntary insurance does not undermine the conclusion that the Supreme Court of North Carolina would examine the insurance policy at issue to determine whether a given charter school waived governmental immunity. Here, section 115C–218.20 required EWA to carry "at least the amount of and types of insurance required by" rules established by the North Carolina State Board of Education. N.C. Gen.Stat. § 115C–218.20(a). In turn, the North Carolina State Board of Education determined the minimum coverage required of EWA and explicitly authorized EWA to purchase additional liability coverage. *See* North

---

**2.** Plaintiffs agreed with this position in a related case when, as defendants, they claimed governmental immunity as EWA employees. *See* [D.E. 8–7] 4–5; *cf.* Ralph Waldo Emerson, *Self Reliance, in Essays:* First Series (1841) ("A foolish consistency is the hobgoblin of little minds, adored by little statesmen and philosophers and divines.").

Carolina State Board of Education Policy Manual, 16 NCAC 6G.0501(a), (b) (2005), *available at* http://sbepolicy.dpi.state.nc.us. In accordance with this rule and EWA's charter, EWA purchased liability insurance that contained nonwaiver provisions. EWA's decision not to purchase additional insurance waiving governmental immunity, which the North Carolina State Board of Education did not require, comports with the decisions of municipalities and traditional public schools to include nonwaiver provisions in their insurance policies. Thus, the nonwaiver provisions control and EWA has governmental immunity.

Next, plaintiffs argue that the terms of a "privately purchased insurance policy" cannot override the plain language of the law. *See* Pls.' Mem. Opp'n Mot. Dismiss 10–11. The argument fails, however, because EWA's insurance policies do not conflict with the plain language of the law. Rather, the statute explicitly conditions the waiver of governmental immunity on the terms of the "privately purchased insurance policy." N.C. Gen.Stat. § 115C–218.20(a).

Finally, plaintiffs cite *Dalenko v. Wake County Department of Social Services,* 157 N.C.App. 49, 578 S.E.2d 599 (2003), and *Mandsager v. University of North Carolina at Greensboro,* 269 F.Supp.2d 662 (M.D.N.C.2003), and argue that they alleged enough facts to survive a motion to dismiss. *See* Pls.' Mem. Opp'n Mot. Dismiss 14. Both cases, however, involved motions to dismiss under Rule 12(b)(6). *See Dalenko,* 157 N.C.App. at 54–55, 578 S.E.2d at 602–03: *Mandsager,* 269 F.Supp.2d at 680–81. Under North Carolina law, governmental immunity poses a jurisdictional issue under Rules 12(b)(1) and 12(b)(2) and invokes a different standard. *See, e.g., Frye,* 612 F.Supp.2d at 701–02; *Myers,* 360 N.C. at 465 n. 2, 628 S.E.2d at 765 n. 2. The defendants' failure in *Dalenko* and *Mandsager* to raise the jurisdictional issue does not help plaintiffs in this case.

In sum, EWA enjoys governmental immunity from plaintiffs' North Carolina tort claims. Thus, the court grants defendants' motion to dismiss plaintiffs' North Carolina tort claims (claims one through eight and eleven through fourteen) against EWA for lack of jurisdiction.

### III.

Next, the court considers defendants' partial motion to dismiss under Rule 12(b)(6). Defendants ask the court to dismiss plaintiffs' negligence claims against Lester in his individual capacity (claims seven and eight), and plaintiffs' claim under the North Carolina Constitution (claim fifteen) against EWA. *See id.* ¶¶ 6–7, 11.

A motion to dismiss under Rule 12(b)(6) tests the legal and factual sufficiency of a complaint. See Fed.R.Civ.P. 12(b)(6); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Vitol, S.A. v. Primerose Shipping Co.,* 708 F.3d 527, 543 (4th Cir.2013); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). The court need not accept a complaint's conclusions of law. *See Iqbal,* 556 U.S. at 678–79, 129 S.Ct. 1937; *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir.2009). As for a complaint's factual sufficiency, a party must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. "[N]aked assertions of wrongdoing" cannot "cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir.2009) (quotation omitted); *see Vitol, S.A.,* 708 F.3d at 543. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. A plaintiff armed with nothing more than "labels and conclusions" or a formulaic recitation of the elements of a cause of action cannot proceed. *Twombly,* 550 U.S. at 555 & n. 3, 127 S.Ct. 1955; *Vitol, S.A.,* 708 F.3d at 543; *Francis,* 588 F.3d at 193. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

### A.

■ Defendants argue that plaintiff's have failed to state a claim of negligent infliction of emotional distress ("NIED") against Lester in his individual capacity. *See* Defs.' Mem. Supp. Mot. Dismiss [D.E. 9] 21–22. To survive defendants' motion to dismiss plaintiffs' NIED claims, plaintiffs must plausibly allege that (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and (3) the conduct did in fact cause the plaintiff severe emotional distress. *See, e.g., Andersen v. Baccus,* 335 N.C. 526, 531, 439 S.E.2d 136, 139 (1994); *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.,* 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). "Allegations of intentional conduct ... even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of an NIED claim." *Horne v. Cumberland Cnty. Hosp. Sys., Inc.,* 746 S.E.2d 13, 19 (N.C.Ct.App.2013); *see Mitchell v. Lydall, Inc.,* 16 F.3d 410, 1994 WL 38703, at *3 (4th Cir.1994) (per curiam) (unpublished table decision); *Roach v. Hilton World-Wide, Inc.,* No. 5:12–CV–309–D, 2013 WL 556195, at *4 (E.D.N.C. Feb. 12, 2013) (unpublished), *aff'd,* 533 Fed.Appx. 341 (4th Cir.2013) (per curiam) (unpublished);

*Bratcher v. Pharm. Prod. Dev., Inc.,* 545 F.Supp.2d 533, 545–46 (E.D.N.C.2008).

Plaintiffs' complaint alleges intentional conduct repackaged and relabeled as negligence. *Compare* Compl. ¶¶ 102–04, 111–13, *with id.* ¶¶ 118,124. For example, in their claim of intentional infliction of emotional distress against Lester, plaintiffs allege that Lester "actively took steps to protect Smith in his position at EWA. Lester ... took steps to protect Smith in his position at EWA, including trying to cover up Smith's wrongdoing and admonishing board members who brought forward concerns about Smith's improper and illegal conduct." Compl. ¶ 102. In plaintiffs' NIED claim, they allege, almost identically, that Lester "*actively* took steps to protect Smith in his position at EWA. Lester ... took steps to protect Smith in his position at EWA, including trying to cover up Smith's wrongdoing." Compl. ¶¶ 118, 124 (emphasis added). Plaintiffs allege only intentional actions. Accordingly, plaintiffs' NIED claims against Lester fail, and the court grants defendants' motion to dismiss claims seven and eight against Lester in his individual capacity.

### B.

■ Finally, the court addresses defendants' argument that plaintiffs have failed to state a claim against EWA under article 1, sections 18 and 19 of the North Carolina Constitution. Under North Carolina law, plaintiffs first must demonstrate the absence of an adequate state remedy before the court may permit plaintiffs to proceed with a claim directly under the North Carolina Constitution against EWA. *See, e.g., Copper ex rel. Copper v. Denlinger,* 363 N.C. 784, 788, 688 S.E.2d 426, 428 (2010); *Craig ex rel. Craig v. New Hanover Bd. of Educ.,* 363 N.C. 334, 338–42, 678 S.E.2d 351, 354–57 (2009); *Corum v. Univ. of N.C.,* 330 N.C. 761, 782, 413 S.E.2d 276,

289 (1992). Here, the court assumes without deciding that plaintiffs lack an adequate state remedy and addresses the merits of the claims. *See Perry v. Pamlico Cnty.*, No. 4:13–CV–107–D, 88 F.Supp.3d 518, 536–37, 2015 WL 690896, at *13 (E.D.N.C. Feb. 18, 2015).

■ First, plaintiffs contend that EWA violated article 1, section 18 by failing to take the internal disciplinary measures that plaintiffs sought. Article 1, section 18 states that "[a]ll courts shall be open; every person for an injury done him in his lands, goods, person, or reputation' shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18.

Plaintiffs do not plausibly allege that EWA barred them from judicial relief, which is the protection guaranteed in section 18. *See, e.g., Teleflex Info. Sys., Inc. v. Arnold*, 132 N.C.App. 689, 693, 513 S.E.2d 85, 88 (1999). Thus, plaintiffs fail to state a claim upon which relief can be granted under article 1, section 18. *See, e.g., Munn–Goins v. Bd. of Trs. of Bladen Cmty. Coll.*, 658 F.Supp.2d 713, 732 (E.D.N.C.2009), *aff'd*, 393 Fed.Appx. 74 (4th Cir.2010) (per curiam) (unpublished).

■ Second, plaintiffs contend that EWA violated their rights under article 1, section 19, which states:

No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

N.C. Const. art. I, § 19. The Supreme Court of North Carolina interprets section 19's "law of the land" clause and the federal due process clause of the Fourteenth Amendment synonymously. *See, e.g., Perry*, 88 F.Supp.3d at 536–37, 2015 WL 690896, at *13; *Munn–Goins*, 658 F.Supp.2d at 731; *Frye*, 612 F.Supp.2d at 705; *State v. Bryant*, 359 N.C. 554, 563, 614 S.E.2d 479, 485 (2005); *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004).

■ Plaintiffs vaguely assert a due process violation.[3] "Substantive due process protection prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998) (quotations and citation omitted). "Procedural due process protection ensures that when government action depriving a person of life, liberty, or property survives substantive due process review, that action is implemented in a fair manner." *Id.*, 508 S.E.2d at 282. To state a claim for substantive due process under section 19, plaintiffs must allege (1) a fundamental property interest protected by the North Carolina Constitution, and (2) a governmental deprivation of this property interest by action that shocks the conscience or has no rational relation to a valid state objective. *Amward Homes, Inc. v. Town of Cary*, 206 N.C.App. 38, 64, 698 S.E.2d 404, 422 (2010); *see MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 281 (4th Cir.2008); *Frye*, 612 F.Supp.2d at 705.

---

**3.** To the extent plaintiffs assert an equal protection claim, the court dismisses the claim because plaintiffs do not plausibly allege unequal treatment from similarly-situated persons, where the treatment was the result of intentional or purposeful discrimination. *See, e.g., Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir.2001); *Munn–Goins*, 658 F.Supp.2d at 729, 731.

Plaintiffs have failed to plausibly allege either a substantive due process violation or a procedural due process violation. Thus, plaintiffs fail to state a claim upon which relief can be granted under article 1, section 19. Accordingly, the court grants defendants' motion to dismiss plaintiffs' claims against EWA under the North Carolina Constitution (claim fifteen).

## IV.

In sum, the courts GRANTS defendants' partial motion to dismiss [D.E. 8]. The court dismisses claims one through eight and eleven through fifteen against EWA and claims seven and eight against Lester. Lester is dismissed as a defendant. The sole surviving claims are plaintiffs' Title VII claims against EWA (claims nine and ten).