MARCIA WRIGHT, as Administrator of the Estate of MATTHEW DILLON BOWSER, and NICHOLE McQUEARY, Plaintiffs v. GASTON COUNTY, SHANNON SALEET, MELANIE DUNCAN, CHRISTY GANTT, and ANN PUTNAM, Defendants

No. COA09-792

(Filed 20 July 2010)

**1. Immunity— governmental function—911 call center**

The trial court did not err by holding that the Gaston County 911 call center performs a governmental function. The center was created to provide for the health and welfare of its citizens and is

a governmental function regardless of the fee charged in order to defray costs. The focus is on the nature of the service, not the provider; the fact that a private company could have operated a similar center does not transform the activity into a proprietary function.

**2. Immunity— governmental—purchase of insurance—governmental liability limitation**

The trial court did not err by granting summary judgment for Gaston County in a wrongful death action involving the 911 call center where an insurance policy had been purchased but the policy contained a governmental liability limitation.

**3. Immunity—governmental—    911    operators—official capacities**

Wrongful death claims against 911 operators in their official capacities were properly dismissed.

**4. Immunity— governmental—911 operators—individual capacities**

Dismissals of wrongful death claims against 911 operators in their individual capacities were reversed and remanded where the dismissals were granted solely on the grounds of governmental immunity. Although plaintiffs did not list capacity in the caption of the amended complaint, the 911 operators were put on notice that they were being sued individually.

Appeal by plaintiffs from order entered 23 December 2008 by Judge Timothy S. Kincaid in Gaston County Superior Court. Heard in the Court of Appeals 13 January 2010.

*Gray, Layton, Kersh, Solomon, Furr & Smith, P.A., by William E. Moore, Jr. and Michael L. Carpenter, for plaintiff-appellants.*

*Stott, Hollowell, Palmer & Windham, L.L.P., by Martha Raymond Thompson, and Aaron C. Low, for defendant-appellants.*

STEELMAN, Judge.

Where the Gaston County 911 call center provided for the health and welfare of the citizens of the county, the trial court properly held as a matter of law that the 911 call center performs a governmental function. Where defendants' insurance policy contains a provision that expressly states that it does not waive the defense of govern-

mental immunity, the trial court did not err by granting Gaston County's motion for summary judgment and granting the 911 operators' motion to dismiss plaintiffs' claims against them in their official capacities. Plaintiffs' complaint also alleges claims against the 911 operators in their individual capacities, for which governmental immunity is not applicable. This case is remanded for further proceedings as to the 911 operators in their individual capacities.

## I. Factual and Procedural Background

On 29 January 2008, plaintiffs filed a complaint that alleged the following: on 12 August 2006, the minor child Matthew Dillon Bowser (Matthew) was in the custody of his father while his mother Nichole McQueary (Nichole) and grandmother Marcia Wright (Marcia) went shopping. At approximately 9:00 p.m., they returned to Matthew's father's residence and found Matthew awake, but crying. At approximately 9:20 p.m., Matthew was sitting in Nichole's lap, facing her, eating an "ice pop." Matthew fell backwards and Nichole caught him, preventing him from hitting his head. When Nichole lifted Matthew up, he was not breathing. Matthew's grandfather immediately put him on the floor and began administering cardiopulmonary resuscitation (CPR). Marcia called 911 and informed Shannon Saleet (Saleet), a 911 operator, that Matthew had stopped breathing. The first 911 call was received at 9:36 p.m. and Saleet designated the call as "general sickness." At 9:40 p.m., 911 was advised that Matthew was possibly running a fever and may have had a seizure. At 9:41 p.m., Paramedic Unit #E56P (Gaston Emergency Medical Services) and Basic EMT Unit #G156 (Gaston Lifesaving and First Aid Crew, Inc.) were dispatched simultaneously. Eleven seconds later, Melanie Duncan (Duncan), also a 911 operator, cleared the primary paramedic unit from the call and only the basic EMT unit was sent to the residence. The basic EMT unit arrived at the residence at 9:53 p.m. and was advised by persons on the scene that Matthew had been resuscitated. Matthew was loaded into the ambulance with Nichole to be transported to Gaston Memorial Hospital. The basic EMT unit requested assistance from the paramedic unit. Matthew was alert during transport and no oxygen was administered.

At 9:59 p.m., Duncan dispatched the paramedic unit to assist the basic EMT unit, and advised the basic EMT unit to meet the paramedic unit at the Gaston County Library. At that time, the basic EMT unit had already passed the library so the ambulance driver pulled into the Wachovia parking lot located less than two miles from Gaston Memorial Hospital to wait for the paramedic unit. Ten minutes

later, the paramedic unit arrived on the scene. As they arrived, Matthew stopped breathing for a second time. Matthew was placed on oxygen and intubation was attempted, but was unsuccessful. The paramedic unit left the parking lot at approximately 10:25 p.m. and arrived at the hospital five minutes later. All subsequent CPR efforts were futile. The autopsy of Matthew showed a slight to moderate edema of the left cerebral hemisphere, moderate chronic esophagitis, mild chronic portal triaditis in the liver, and mild to moderate amount of gastric contents in both lungs. Matthew died from a lack of oxygen to the brain.

Plaintiffs initially filed this action against Gaston County, Gaston Emergency Medical Services, and Gaston Lifesaving and First Aid Crew, Inc., and alleged claims for wrongful death, medical malpractice, reckless infliction of emotional distress, negligent infliction of emotional distress, *res ispa loquitur*, and punitive damages. Gaston County filed an answer, which denied the material allegations of plaintiffs' complaint and asserted several affirmative defenses, including governmental immunity.

On 12 August 2008, plaintiffs moved to amend their complaint to add 911 operators Saleet, Duncan, Christy Gantt, and Ann Putnam (911 operators) in their individual and official capacities. On 15 August 2008, Gaston County filed a motion for summary judgment on the basis of governmental immunity. Plaintiffs' motion to amend their complaint was granted on 4 September 2008. On 12 September 2008, plaintiffs voluntarily dismissed their claims against Gaston Emergency Medical Services and Gaston Lifesaving and First Aid Crew, Inc. based upon a settlement agreement. On 12 November 2008, Gaston County and the 911 operators filed an amended answer, which contained a motion to dismiss pursuant to Rule 12(b)(1), (2), and (6) on the basis that the claims were barred by governmental immunity. On 8 December 2008, a hearing was held on Gaston County's motion for summary judgment and on the remaining defendants' motion to dismiss. The trial court granted these motions on the basis of governmental immunity and dismissed plaintiffs' action. Plaintiffs appeal.

### III. The Doctrine of Governmental Immunity

In North Carolina the law on governmental immunity is clear. In the absence of some statute that subjects them to liability, the state and its governmental subsidiaries are immune from tort liability when discharging a duty imposed for the public benefit. . . . [C]ounties have governmental immunity when engaging in activ-

ity that is clearly governmental in nature and not proprietary. One cannot recover for personal injury against a government entity for negligent acts of agents or servants while they are engaged in government functions. However, the county may waive its governmental immunity by purchasing liability insurance for specific claim amounts or certain actions.

*McIver v. Smith*, 134 N.C. App. 583, 585, 518 S.E.2d 522, 524 (1999) (internal citations omitted), *disc. review improvidently allowed,* 351 N.C. 344, 525 S.E.2d 173 (2000). Counties only waive immunity to the extent that the county is indemnified by the insurance contract from liability for the acts alleged. N.C. Gen. Stat. § 153A-435 (2007); *Dawes v. Nash Cty.*, 357 N.C. 442, 446, 584 S.E.2d 760, 763, *reh'g denied,* 357 N.C. 511, 587 S.E.2d 417 (2003). "Governmental immunity protects not only the county, but also its officers and employees when they are sued in their official capacities." *Childs v. Johnson*, 155 N.C. App. 381, 386, 573 S.E.2d 662, 665 (2002) (citation omitted).

## IV. Governmental Function v. Proprietary Function

**[1]** In their first argument, plaintiffs contend that the trial court erred by holding as a matter of law that the Gaston County 911 call center performs a governmental function. We disagree.

"Governmental immunity depends on the nature of the power the entity is exercising." *McIver*, 134 N.C. App. at 586, 518 S.E.2d at 525. "[I]f the governmental entity was acting in a government function, there can be no recovery unless the county waives its governmental immunity; but if the operations were proprietary rather than governmental, the county is not protected." *Id.* (citation omitted).

> Any activity . . . which is discretionary, political, legislative, or public in nature and performed for the public good [on] behalf of the State rather than for itself comes within the class of governmental functions. When, however, the activity is commercial or chiefly for the private advantage of the compact community, it is private or proprietary.

*Britt v. Wilmington*, 236 N.C. 446, 450, 73 S.E.2d 289, 293 (1952) (citation omitted). "Providing for the health and welfare of the citizens of the county is a legitimate and traditional function of county government." *McIver*, 134 N.C. App. at 586, 518 S.E.2d at 525 (quotation omitted). Because the responsibility for preserving the health and welfare of its citizens is "a traditional function of government, it follows that the county may operate government functions that ensure the health and welfare of its citizens." *Id.* (citation omitted).

In *McIver v. Smith, supra,* this Court addressed whether the Forsyth County ambulance service was entitled to governmental immunity. One of the main contentions between the parties was whether providing the ambulance service was a government or proprietary function. *Id.* at 586, 518 S.E.2d at 525. In *McIver,* the plaintiffs argued that it was proprietary based upon, *inter alia,* the fact that the ambulance service charged the public a fee for its operation, and that the ambulance service was not historically a government function and was providing a service that a private individual, corporation or company could provide. This Court found no merit in either of these contentions. The arguments made by plaintiffs in the instant case are virtually identical to those made in *McIver.* We hold the reasoning of *McIver* is applicable to this case.

As to the service fee charged, this Court stated in *McIver*:

> The fact that Forsyth County charged a fee for its ambulance service does not alone make it a proprietary operation. The test to determine if an activity is governmental in nature is "whether the act is for the common good of all without the element of . . . pecuniary profit." As determined above, the establishment of the ambulance service is a government function. Under the provisions of N.C.G.S. § 153A-250(b), Forsyth County has the authority to charge a fee for the ambulance service. While it charged a flat fee of $225 for the service, Forsyth County operated the ambulance service at losses averaging nearly two million dollars annually over a ten year span. The governmental nature of the ambulance service, to provide for the health and care of its citizens, is not altered by the charging of a fee; the fee is assessed only to help defray the costs of operating the system.

*Id.* at 587, 518 S.E.2d at 525-26 (internal citations and quotation omitted) (ellipses original).

In the instant case, Gaston County does not operate the 911 call center for profit. All of the funds from the Emergency Telephone System Funds are "permitted by [N.C. Gen. Stat.] § 62A-8[1] solely for the lease, purchase, or maintenance of emergency telephone equipment,

---

1. N.C. Gen. Stat. § 62A-8 was repealed by 2007 N.C. Sess. Laws ch. 383, § 2(a) effective 1 January 2008. A service charge for 911 service is now imposed pursuant to N.C. Gen. Stat. § 62A-43 ("A monthly 911 service charge is imposed on each active voice communications service connection that is capable of accessing the 911 system. The service charge is seventy cents (70 cent(s)) or a lower amount set by the 911 Board under subsection (d) of this section. The service charge is payable by the subscriber to the voice communications service provider.").

including necessary computer hardware, software and database provisioning, addressing, and nonrecurring costs of establishing a 911 system, and the rates associated with the service supplier's 911 service and other service supplier charges." Based upon the reasoning in *McIver*, plaintiffs' first contention fails. The 911 call center was established to provide for "the health and welfare of its citizens" and is a governmental function regardless of the fee charged in order to defray operating costs.

Plaintiffs next argue that the 911 call center was providing a service that a private individual, corporation, or company could provide. However, the focus is on the nature of the service itself, not the provider of the service. *See McIver*, 134 N.C. App. at 586, 518 S.E.2d at 525. Because a private company *could* have operated a similar call center, that does not transform the county's into a proprietary function. *Id.* at 587, 518 S.E.2d at 526. We note that in North Carolina, 911 call centers are uniformly run by local governmental agencies.

The Gaston County 911 call center operated to "ensure the health and welfare of its citizens." The trial court did not err by holding as a matter of law that the Gaston County 911 call center performs a governmental function. This argument is without merit.

### V. Purchase of Insurance Coverage

[2] In their second argument, plaintiffs contend that the trial court erred by granting Gaston County's motion for summary judgment because the county waived governmental immunity through the purchase of insurance. We disagree.

"A county may waive sovereign immunity by purchasing liability insurance, but only to the extent of coverage provided." *Cunningham v. Riley*, 169 N.C. App. 600, 602, 611 S.E.2d 423, 424 (2005) (citations omitted), *disc. review denied and appeal dismissed*, 359 N.C. 850, 619 S.E.2d 405 (2005), *cert. denied*, 546 U.S. 1142, 163 L. Ed. 2d 1008 (2006). "Waiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." *Guthrie v. State Ports Authority*, 307 N.C. 522, 537-38, 299 S.E.2d 618, 627 (1983) (citations omitted); *see also Orange County v. Heath*, 282 N.C. 292, 296, 192 S.E.2d 308, 310 (1972) ("The State and its governmental units cannot be deprived of the sovereign attributes of immunity except by a clear waiver by the lawmaking body."). A plaintiff that has brought claims against a governmental entity and its employees acting in their

official capacities must allege and prove that the officials have waived their immunity or otherwise consented to suit. *Sellers v. Rodriguez*, 149 N.C. App. 619, 623, 561 S.E.2d 336, 339 (2002).

In the instant case, it is undisputed that a liability insurance policy for Gaston County was in effect on 12 August 2006. However, the insurance policy contains the following provision listed in Section V—Conditions:

P. Governmental Liability Limitation

By accepting coverage under this policy, neither the *insured* nor States waive any of the *insured's* statutory or common law immunities and limits of liability and/or monetary damages (including what are commonly referred to as liability damages caps), and States shall not be liable for any *claim* or *damages* in excess of such immunities and/or limits. . . . .

The dispositive issue is whether this provision bars plaintiffs' action. In *Patrick v. Wake Cty. Dep't of Human Servs.*, 188 N.C. App. 592, 655 S.E.2d 920 (2008), this Court examined a similar exclusion in a liability insurance policy. In *Patrick*, the plaintiff filed a complaint against the defendants in their official capacities as supervisors of the Child Protective Services of the Wake County Department of Human Services. *Id.* at 593, 655 S.E.2d at 922. The defendants acknowledged the purchase of liability insurance, but argued that the policy excluded coverage for claims for which sovereign immunity was a defense. *Id.* at 596, 655 S.E.2d at 922. The insurance policy at issue contained the following exclusion: "this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defense[] is asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable." *Id.* at 596, 655 S.E.2d at 923 (emphasis omitted).

"If the language in an exclusionary clause contained in a policy is ambiguous, the clause is 'to be strictly construed in favor of coverage.'" *Daniel v. City of Morganton*, 125 N.C. App. 47, 53, 479 S.E.2d 263, 267 (1997) (quoting *State Auto. Mut. Ins. Co. v. Hoyle*, 106 N.C. App. 199, 201-02, 415 S.E.2d 764, 765, *disc. rev. denied*, 331 N.C. 557, 417 S.E.2d 803 (1992)). "If the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the

contract or impose liabilities on the parties not bargained for and found therein."

*Id.* at 596-97, 655 S.E.2d at 924. We held that the exclusionary provision in *Patrick* was clear and unambiguous, and that based upon that provision the defendants had not waived sovereign immunity through the purchase of the policy. *Id.* at 597, 655 S.E.2d at 924.

Recently, in *Estate of Earley v. Haywood Cty. Dep't of Soc. Servs.*, this Court followed the holding and analysis in *Patrick*, and upheld a similar exclusionary clause:

> We acknowledge the arguably circular nature of the logic employed in *Patrick*. The facts are that the legislature explicitly provided that governmental immunity is waived to the extent of insurance coverage, but the subject insurance contract eliminates any potential waiver by excluding from coverage claims that would be barred by sovereign immunity. Thus, the logic in *Patrick* boils down to: Defendant retains immunity because the policy doesn't cover his actions and the policy doesn't cover his actions because he explicitly retains immunity. Nonetheless in this case, as in *Patrick*, where the language of both the applicable statute and the exclusion clause in the insurance contract are clear, we must decline Plaintiff's invitation to implement "policy" in this matter. Any such policy implementation is best left to the wisdom of our legislature.

204 N.C. App. 338, 343, 694 S.E.2d 405, 409-10 (June 1, 2010) (No. COA09-1558).

The provision in the instant case is materially indistinguishable from the provisions in *Patrick* and *Estate of Early*. We are therefore bound by this Court's prior holdings. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Plaintiffs' claims against Gaston County are barred. *See Patrick*, 188 N.C. App. at 596, 655 S.E.2d at 923 ("A governmental entity does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy."). The trial court properly granted Gaston County's motion for summary judgment on the basis of governmental immunity.

### VI.  911 Operators

In their third argument, plaintiffs contend that the trial court erred by granting the 911 operators motion to dismiss based upon governmental immunity. We agree in part.

## A. Official Capacity

[3] It is well-established that "official-capacity suits are merely another way of pleading an action against the governmental entity." *Mullis v. Seacrest*, 347 N.C. 548, 554, 495 S.E.2d 721, 725 (1998) (citation omitted); *see also Reid v. Town of Madison*, 137 N.C. App. 168, 170-71, 527 S.E.2d 87, 89 (2000) ("[A] suit against a defendant in his official capacity means that the plaintiff seeks recovery from the entity of which the public servant defendant is an agent. The term 'official capacity' is not synonymous with the term 'official duties.' " Indeed, the performance of an employee's 'duties' is irrelevant to the determination of whether a defendant is being sued in an official or individual capacity." (internal quotations omitted)). Based upon the above analysis, the claims against the 911 operators in their official capacities were properly dismissed.

## B. Individual Capacity

[4] Defendants argue that the 911 operators were sued in their official capacities only, and not individually. Defendants point to plaintiffs' failure to specify in the caption whether plaintiffs were suing the 911 operators in their official or individual capacity. In *Mullis v. Seacrest, supra,* our Supreme Court set forth the test employed where a complaint does not clearly specify whether the defendants are being sued in their individual or official capacities:

> where the complaint does not clearly specify whether the defendants are being sued in their individual or official capacities, "the 'course of proceedi gs' . . . typically will indicate the nature of the liability sought to be imposed."
>
> . . . .
>
> The crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged. If the plaintiff seeks an injunction requiring the defendant to take an action involving the exercise of a governmental power, the defendant is named in an official capacity. If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant. If the former, it is an official-capacity claim; if the latter, it is an individual-capacity claim; and if it is both, then the claims proceed in both capacities.

*Id.* at 552, 495 S.E.2d at 723 (quotations and alteration omitted).

In the instant case, plaintiffs filed a motion to amend their complaint on 12 August 2008 to join additional parties and specifically requested that the 911 operators be added to the action "in their individual and official capacities." The proposed amended complaint's caption listed the 911 operators as being sued in their individual and official capacities. The trial court granted the motion to amend. However, in plaintiffs' filed amended complaint, they failed to state in the caption the capacity in which the 911 operators were being sued. The allegations against the 911 operators in the body of the complaint were identical:

> Upon information and belief, [911 operator] is a citizen and resident of Gaston County, North Carolina and at the times of the events alleged hereto, was a 911 dispatcher, employed by Gaston County. [911 operator] was at all times relevant hereto *acting individually*, and within the course and scope of her employment, duties and authority on behalf of Gaston County.

(Emphasis added).

In addition, plaintiffs prayed for the following relief: "Compensatory damages of and from the 911 Defendants jointly and severally as their liabilities may appear for medical malpractice[.]"

The purpose of alleging the capacity in which each individual is being sued "will allow defendants to have an opportunity to prepare for a proper defense and eliminate the unnecessary litigation that arises when parties fail to specify the capacity." *Reid*, 137 N.C. App. at 171-72, 527 S.E.2d at 90 (citations omitted). In the instant case, the 911 operators were put on notice that they were being sued individually, both in plaintiffs' motion to amend and the amended complaint; despite plaintiffs' failure to list capacity in the caption. We reiterate the guidance given by our Supreme Court on this issue:

> It is a simple matter for attorneys to clarify the capacity in which a defendant is being sued. Pleadings should indicate in the caption the capacity in which a plaintiff intends to hold a defendant liable. For example, including the words "in his official capacity" or "in his individual capacity" after a defendant's name obviously clarifies the defendant's status. In addition, the allegations as to the extent of liability claimed should provide further evidence of capacity. Finally, in the prayer for relief, plaintiffs should indicate whether they seek to recover damages from the defendant individually or as an agent of the governmental entity. These

simple steps will allow future litigants to avoid problems such as the one presented to us by this appeal.

*Mullis,* 347 N.C. at 554, 495 S.E.2d 724-25.

The trial court granted the motion to dismiss as to the 911 operators solely on the grounds of governmental immunity. *See Meyers v. Wall,* 347 N.C. 97, 113, 489 S.E.2d 880, 888 (1997) ("The authorities generally hold the employee individually liable for negligence in the performance of his duties, notwithstanding the immunity of his employer . . . ." (quotation omitted)). The trial court's granting of plaintiffs' motion to dismiss is reversed as to the claims against the 911 operators individually and this case is remanded for further proceedings regarding only these claims. We express no opinion as to the merits of any claim against the 911 operators in their individual capacities.

AFFIRMED IN PART; REVERSED IN PART.

Judges McGEE and STROUD concur.