IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-266

No. COA20-422

Filed 15 June 2021

Gaston County, No. 17 CVS 4800

CHARLES B. CLINE and wife, DANIELLE C. CLINE, Plaintiffs,

v.

JAMES BANE HOME BUILDING, LLC; JAMES BANE, INDIVIDUALLY; CURTIS HOPPER, in his individual capacity as an inspector for GASTON COUNTY HEALTH DEPARTMENT; GASTON COUNTY, NORTH CAROLINA; LACHELLE CROSBY and HOME BUYERS MARKETING, II, INC., Defendants.

Appeal by Plaintiffs from order entered 19 March 2020 by Judge Kevin M. Bridges in Gaston County Superior Court. Heard in the Court of Appeals 9 February 2021.

*Devore, Acton & Stafford, P.A., by Fred W. DeVore, III and Brittany N. Conner, for plaintiffs-appellants.*

*The Law Office of Martha R. Thompson, by Martha Raymond Thompson, for defendants-appellees.*

MURPHY, Judge.

¶ 1 Unless waived, a county and its employees acting in their official capacities are protected from tort actions under the doctrine of governmental immunity. Likewise, the doctrine of public official's immunity protects a public official, when sued in his or her individual capacity, from actions for mere negligence in the performance of

their duties. However, this immunity does not exist for public employees.

¶ 2  Here, the trial court did not err in granting summary judgment in favor of Gaston County and Curtis Hopper, in his official capacity, based on governmental immunity. However, the trial court erred in granting summary judgment in favor of Curtis Hopper, in his individual capacity, based on public official's immunity since he is a public employee. We affirm in part the trial court's judgment insofar as its ruling is based on governmental immunity, but reverse in part the trial court's decision to grant summary judgment on the basis of public official's immunity.

## **BACKGROUND**

¶ 3  On 12 February 2016, Plaintiffs-Appellants Charles and Danielle Cline ("the Clines") closed on a newly constructed home from non-appealing Defendant James Bane Home Building, LLC ("Bane Homes"). The Clines' home is located in Gaston County and is serviced by a septic system. Curtis Hopper ("Hopper"), a Gaston County Environmental Health Administrator, had previously approved a septic system permit classified as "provisionally suitable."[1] Within a few months of moving into the home, the Clines started to observe raw sewage bubbling in the yard and

---

[1] "Provisionally suitable" is one of several choices of soil suitability and these sites "may be utilized for a ground absorption sewage treatment and disposal system." 15A N.C. Admin. Code § 18A.1948(b) (2019). "Sites classified [p]rovisionally [s]uitable require some modifications and careful planning, design, and installation in order for a ground absorption sewage treatment and disposal system to function satisfactorily." *Id.*

running down the driveway. To determine the source and cause of the raw sewage, the Clines hired an expert who opined that the septic system, as constructed, was undersized and insufficient for the size of the home.

¶ 4     The Clines sued Bane Homes and James Bane in his individual capacity for breach of contract and breach of implied warranty of habitability; Bane Homes for rescission; James Bane in his individual capacity for negligence; Hopper, in his individual capacity and official capacity, and Gaston County for negligence; LaChelle Crosby, the real estate agent who marketed the home, for negligence and misrepresentation; and LaChelle Crosby and Home Buyers Marketing, II, Inc. for unfair and deceptive trade practices.[2] Following discovery, Appellees filed a motion for summary judgment, arguing they were entitled to governmental immunity and public official's immunity.[3] In its order filed 19 March 2020 ("Order"), the trial court granted Appellees' motion for summary judgment, ordering "Defendants Gaston County and Curtis Hopper are entitled to judgment as a matter of law on the bases of governmental immunity and public official[']s immunity." The Clines timely

---

[2] This appeal involves only the negligence claims against Hopper, in both his individual and official capacity, and Gaston County. When referring to Hopper and Gaston County collectively, the term "Appellees" will be used to avoid referring to any Defendants that are not the subject of this appeal.

[3] Public official's immunity is also referred to as "public officers' immunity" and the two terms are interchangeable. *See e.g., Schlossberg v. Goins*, 141 N.C. App. 436, 445, 540 S.E.2d 49, 56 (2000), *disc. rev. denied*, 355 N.C. 215, 560 S.E.2d 136 (2002) (referring to "public officers' immunity"); *Summey v. Barker*, 142 N.C. App. 688, 689, 544 S.E.2d 262, 264 (2001) (referring to "public official's immunity").

appealed the Order. Bane Homes, James Bane, LaChelle Crosby, and Home Buyers Marketing, II, Inc. remain Defendants in the case and did not appeal the Order.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2019). When considering a summary judgment motion, "all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion." *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975).

We review a trial court's order granting summary judgment de novo. *See Builders Mut. Ins. Co. v. N. Main Constr. Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006). "Under a *de novo* review, [we] consider[] the matter anew and freely substitute[] [our] own judgment" for that of the lower tribunal. *In re Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). "The showing required for summary judgment may be accomplished by proving an essential element of the opposing party's claim . . . would be barred by an affirmative defense . . . ." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).

### A. Jurisdiction

**1. Subject Matter Jurisdiction**

¶ 7          Hopper argues we do not have subject matter jurisdiction over the claims against him, in either capacity, because subject matter jurisdiction over his alleged acts of negligence is vested exclusively in the Industrial Commission pursuant to the State Tort Claims Act, N.C.G.S. Chapter 143, Article 31.  We disagree.

¶ 8          In *Meyer v. Walls*, our Supreme Court decided "whether jurisdiction for [a] suit against [Buncombe County Department of Social Services lied] before the Industrial Commission pursuant to the Tort Claims Act or before the Superior Court as originally filed by [the] plaintiff." *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997).  Our Supreme Court held "the Tort Claims Act applies only to actions against state departments, institutions, and agencies and does not apply to claims against officers, employees, involuntary servants, and agents of the State." *Id.* at 107-08, 489 S.E.2d at 885-86.  Our Supreme Court also explicitly overruled *Robinette v. Barriger*, which held "Alexander County Health Department is a state agency, rather than a county agency, and that because the Industrial Commission has exclusive jurisdiction of negligence actions against the State, the trial court did not err in granting summary judgment for the county based on a lack of subject matter jurisdiction." *Id.* at 107, 489 S.E.2d at 886 (citing *Robinette v. Barriger*, 116 N.C. App. 197, 447 S.E.2d 498 (1994)).  Our Supreme Court ultimately concluded "the Tort Claims Act does not apply to the claim against Buncombe County [Department of

Social Services].” *Id.* at 107-08, 489 S.E.2d at 885-86. We similarly hold Gaston County's health department is not a state agency or institution.

¶ 9 Here, Hopper was acting as an agent for Gaston County's health department, which is not a state department, or institution, but rather a county agency. The Industrial Commission does not have exclusive jurisdiction over his alleged acts of negligence, and both the trial court and this Court have subject matter jurisdiction.

**2. Appellate Jurisdiction**

¶ 10 Appellees argue this appeal “should be dismissed as an improper interlocutory appeal as there are insufficient grounds for appellate review.” We disagree.

¶ 11 “An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.” *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). In contrast, “[a] final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court.” *Id.* at 361-62, 57 S.E.2d at 381. “[T]he entry of summary judgment for fewer than all defendants is not a final judgment[,]” but rather an interlocutory judgment. *Long v. Giles*, 123 N.C. App. 150, 152, 472 S.E.2d 374, 375 (1996). Although an interlocutory order is ordinarily not immediately appealable, an interlocutory order may be immediately appealed if it affects a substantial right. *See* N.C.G.S. § 1-277(a) (2019); N.C.G.S. § 7A-27(b)(3)(a) (2019).

¶ 12 Here, the Order disposed of only the claims against Gaston County and Hopper, and the remaining claims include: breach of contract and breach of implied warranty of habitability against Bane Homes and James Bane in his individual capacity; rescission against Bane Homes; negligence against James Bane in his individual capacity; negligence and misrepresentation against LaChelle Crosby; and unfair and deceptive trade practices against LaChelle Crosby and Home Buyers Marketing, II, Inc. As the Clines' various claims against the other Defendants have not been resolved and further action by the trial court is required "in order to settle and determine the entire controversy[,]" the Clines' appeal from the Order is an appeal from "[a]n interlocutory order . . . , which does not dispose of the case[.]" *Veazey*, 231 N.C. at 362, 57 S.E.2d at 381. The Order must affect a substantial right in order for us to have proper appellate jurisdiction.

¶ 13 The Clines argue the Order affects a substantial right and is immediately appealable because

> [a] litigant appealing the denial of a sovereign[4] immunity
> defense need only show that they raised the issue below
> and that the trial court rejected it in order to establish that
> the challenged order affects [a] substantial right. [The trial
> court judge] ruled against [the Clines] exclusively on the

---

[4] Gaston County is a county agency. "As such, the immunity it possesses is more precisely identified as governmental immunity, while sovereign immunity applies to the State and its agencies." *Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 335 n.3, 678 S.E.2d 351, 353 n.3 (2009). For the purposes of our analysis, the distinction is immaterial.

issue of "governmental immunity and public official['s] immunity." Thus, this immediate appeal of governmental immunity is approved by statute and this Court. Applying the Court's logic in [*Greene v. Barrick*, 198 N.C. App. 647, 680 S.E.2d 727 (2009)] . . . , [the Clines] need not further explain why, when on the face of [the trial judge's] ruling a substantial right is affected. So long as the issue involves sovereign immunity, an immediate appeal is properly before this Court.

In *Greene*, we decided an interlocutory order granting summary judgment based on the defense of sovereign immunity was properly before us:

This Court has held that "when the moving party claims sovereign, absolute or qualified immunity, the denial of a motion for summary judgment is immediately appealable." *Moore v. Evans*, 124 N.C. App. 35, 39, 476 S.E.2d 415, 420 (1996) (citations omitted). Even though this case involves the grant, rather than the denial of sovereign immunity, we believe the same type of issues are called into question by the appeal, and therefore, [the] plaintiff's appeal is properly before this Court.

*Greene*, 198 N.C. App. at 650, 680 S.E.2d at 729-30. According to *Greene*, both an order *denying* a motion for summary judgment on the basis of sovereign immunity and an order *granting* a motion for summary judgment on the basis of sovereign immunity affect a substantial right. *Id.*

¶ 14 Appellees argue our "holding [in *Greene*] is inconsistent with the public policy bases for permitting interlocutory appeals." However,

as is often the case with our jurisprudence, what one might reasonably assume is not what our case law holds. In a series of cases that we are unable to distinguish from this

> one, our Court has held that the *grant* of a motion to dismiss based on sovereign or governmental immunity is immediately appealable. Because one panel of this Court cannot overrule another, we are bound to hold that [the Clines'] interlocutory appeal on this issue is permissible.

*Ballard v. Shelley*, 257 N.C. App. 561, 564, 811 S.E.2d 603, 605-06 (2018) (citations omitted) (emphasis in original). As an appeal granting governmental immunity affects a substantial right, the Clines' appeal is properly before this Court. We now address the merits of the appeal.

**B. Claims Against Gaston County and Hopper in his Official Capacity**

The Clines argue the trial court erred by granting summary judgment to Gaston County and Hopper, in his official capacity, on the grounds Gaston County waived its governmental immunity for itself and its employees when it purchased liability insurance.

"Under the doctrine of governmental immunity, a county or municipal corporation is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity." *Estate of Williams ex rel. Overton v. Pasquotank Cty. Parks & Recreation Dep't*, 366 N.C. 195, 198, 732 S.E.2d 137, 140 (2012) (marks omitted). "In North Carolina, governmental immunity serves to protect a municipality, as well as its officers or employees who are sued in their official capacity, from suits arising from torts committed while the officers or employees are performing a governmental function." *Schlossberg*, 141 N.C. App. at

439, 540 S.E.2d at 52. Governmental immunity is "absolute unless the [county] has consented to [suit] or otherwise waived its right to immunity." *Id*. at 440, 540 S.E.2d at 52.

### 1. Governmental Function

¶ 17 Exercising a governmental function is a requirement for governmental immunity to attach. *See Estate of Williams*, 366 N.C. at 198, 732 S.E.2d at 140. However, the Clines do not argue, at the trial court level or on appeal, that Gaston County or Hopper, in his official capacity, were not performing a governmental function when they were allegedly negligent. As such, whether Gaston County or Hopper, in his official capacity, were performing a governmental function is deemed abandoned and not an issue before us on appeal. *See* N.C. R. App. P. 28(a) (2021) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned.").

### 2. Purchase of Insurance Coverage

¶ 18 "A plaintiff bringing claims against a governmental entity and its employees acting in their official capacities must allege and *prove* that the officials have waived their [governmental] immunity or otherwise consented to suit[.]" *Sellers v. Rodriguez*, 149 N.C. App. 619, 623, 561 S.E.2d 336, 339 (2002) (emphasis added). Under the plain language of N.C.G.S. § 153A-435, counties waive governmental

immunity by purchasing an insurance policy that would indemnify the county and its employees:

> A county may contract to insure itself and any of its officers, agents, or employees against liability for wrongful death or negligent or intentional damage to person or property or against absolute liability for damage to person or property caused by an act or omission of the county or of any of its officers, agents, or employees when acting within the scope of their authority and the course of their employment. The board of commissioners shall determine what liabilities and what officers, agents, and employees shall be covered by any insurance purchased pursuant to this subsection.
>
> Purchase of insurance pursuant to this subsection waives the county's governmental immunity, *to the extent of insurance coverage*, for any act or omission occurring in the exercise of a governmental function. Participation in a local government risk pool pursuant to Article 23 of [N.C.G.S.] Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section. By entering into an insurance contract with the county, an insurer waives any defense based upon the governmental immunity of the county.

N.C.G.S. § 153A-435(a) (2019) (emphasis added). While "[a] county may waive [governmental] immunity by purchasing liability insurance [under N.C.G.S. § 153A-435], [it is waived] only to the extent of coverage provided." *Cunningham v. Riley*, 169 N.C. App. 600, 602, 611 S.E.2d 423, 424, *disc. rev. denied and appeal dismissed*, 359 N.C. 850, 619 S.E.2d 405 (2005), *cert. denied*, 546 U.S. 1142, 163 L. Ed. 2d 1008 (2006).

¶ 19        Appellees argue the purchase of liability insurance does not constitute waiver of governmental immunity because the County Manager of Gaston County, Kim Eagle ("Eagle"), asserts in an affidavit that "the insurance purchased by Gaston County does not extend to those governmental functions for which governmental immunity would apply and does not operate as a waiver of the defense of governmental immunity."  We have previously interpreted similar provisions in liability insurance contracts.  *See Patrick v. Wake Cty. Dep't of Human Servs.,* 188 N.C. App. 592, 655 S.E.2d 920 (2008); *Wright v. Gaston Cty.*, 205 N.C. App. 600, 698 S.E.2d 83 (2010).

¶ 20        In *Patrick*, the plaintiff filed a complaint against the defendants in their official capacities as supervisors of the Child Protective Services of the Wake County Department of Human Services.  *Patrick*, 188 N.C. App. at 593, 655 S.E.2d at 922. The insurance policy at issue there contained the following exclusion: "this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defense[] is asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable."  *Id.* at 596, 655 S.E.2d at 923 (alteration omitted).  In holding the exclusionary provision was clear and unambiguous and the defendants had not waived governmental immunity through the purchase of the policy, we stated:

> If the language in an exclusionary clause contained in a policy is ambiguous, the clause is to be strictly construed in favor of coverage. If the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.

*Id.* at 596-97, 655 S.E.2d at 924 (citations and marks omitted).

¶ 21 In *Wright*, the provision at issue stated:

> By accepting coverage under this policy, neither the *insured* nor States waive any of the *insured's* statutory or common law immunities and limits of liability and/or monetary damages . . . , and States shall not be liable for any *claim* or *damages* in excess of such immunities and/or limits.

*Wright*, 205 N.C. App. at 607, 698 S.E.2d at 89 (emphasis in original). We relied on our holding and reasoning in *Patrick* to conclude Gaston County did not waive governmental immunity. *Id.* at 607-08, 698 S.E.2d at 89-90.

¶ 22 Here, the Record reflects a liability insurance policy for Gaston County was in effect from 1 July 2015 to 1 July 2016. However, the insurance contract in its entirety is not contained in the Record and does not appear to have been presented to the trial court. A total of three pages from the actual policy are included in the Record, entitled: the *Schedule of Forms and Endorsements*, the *Public Risk Liability Retained Limit Policy Declarations*, and the *"Wrongful Act" Claims-Made Coverage*. These three pages do not contain the language of the coverage provisions or exclusion

provisions and their exact language does not appear anywhere else in the Record. In

her affidavit, Eagle provided a parol summary of her interpretation of the policy:

> On the occurrence dates alleged in the Complaint and its
> amendments, Gaston County was self-insured up to
> $250,000[.00] and had certain excess liability insurance . .
> . that comes into effect for certain incidents after
> $250,000[.00] has been expended by the County on each
> such incident. However, the insurance purchased by
> Gaston County does not extend to those governmental
> functions for which governmental immunity would apply
> and does not operate as a waiver of the defense of
> governmental immunity.

While Appellees' motion for summary judgment indicates reliance on discovery

responses, nothing in the Record indicates presentation of the insurance contract to

the trial court for examination of its contents.

¶ 23        The lack of the insurance contract and exclusionary language in the Record

restricts us from determining the existence of coverage for the alleged acts of Gaston

County or Hopper in his official capacity.

> Once the moving party has made and supported its motion
> for summary judgment, section (e) of Rule 56 provides that
> the burden is then shifted to the non-moving party to
> introduce evidence in opposition to the motion, setting
> forth specific facts showing that there is a genuine issue for
> trial. At [that] time, the non-movant must come forward
> with a forecast of his own evidence.

*Crowder Constr. Co. v. Kiser*, 134 N.C. App. 190, 196, 517 S.E.2d 178, 183 (marks

omitted), *disc. rev. denied*, 351 N.C. 101, 541 S.E.2d 142 (1999). The Clines, as the

non-moving party, had the burden to produce the insurance contract to allow an examination of Gaston County's potential waiver of governmental immunity.

¶ 24        The Clines failed to forecast evidence showing the existence of a genuine issue of material fact as to whether Appellees waived governmental immunity to the extent of Gaston County's insurance coverage. The entry of summary judgment in favor of Gaston County and Hopper, in his official capacity, was proper. However, the claims against Hopper, in his individual capacity, are controlled by separate caselaw, which is addressed below.

### C. Claims Against Hopper in His Individual Capacity

¶ 25        The Clines argue Hopper's position as an Environmental Health Administrator is a public employee, rather than a public official, and therefore he is not entitled to public official's immunity. We agree.

¶ 26        The defense of public official's immunity is a "derivative form" of governmental immunity. *Epps v. Duke Univ., Inc.,* 122 N.C. App. 198, 203, 468 S.E.2d 846, 850, *disc. rev. denied*, 344 N.C. 436, 476 S.E.2d 115 (1996). Public official's immunity precludes suits against public officials in their individual capacities and protects them from liability "[a]s long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption[.]" *Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976).

¶ 27    "It is settled law in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Meyer*, 347 N.C. at 112, 489 S.E.2d at 888. "An employee, on the other hand, is personally liable for negligence in the performance of his or her duties proximately causing an injury." *Reid v. Roberts*, 112 N.C. App. 222, 224, 435 S.E.2d 116, 119, *disc. rev. denied*, 335 N.C. 559, 439 S.E.2d 151 (1993). "Public officials receive immunity because it would be difficult to find those who would accept public office or engage in the administration of public affairs if they were to be personally liable for acts or omissions involved in exercising their discretion." *Isenhour v. Hutto*, 350 N.C. 601, 610, 517 S.E.2d 121, 127 (1999) (marks omitted).

> Our courts have recognized several basic distinctions between a public official and a public employee, including: (1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties.

*Id.* We are guided by the factors set forth in *Isenhour* and our prior holdings to determine whether Hopper, as an Environmental Health Administrator for a local county department of health, is a public official entitled to immunity or a public employee.

¶ 28    We begin our analysis by addressing the first factor, whether the position of Environmental Health Administrator is "created by the constitution or statutes[.]" *Id.* "A position is considered 'created by statute' when 'the officer's position has a clear statutory basis or the officer has been delegated a statutory duty by a person or organization created by statute' or the Constitution." *Baker v. Smith*, 224 N.C. App. 423, 428, 737 S.E.2d 144, 148 (2012) (alteration omitted) (quoting *Fraley v. Griffin*, 217 N.C. App. 624, 627, 720 S.E.2d 694, 696 (2011), *cert. denied*, 367 N.C. 234, 748 S.E.2d 552 (2013)).

¶ 29    We have previously decided the positions of "Environmental Health Specialists" and "Environmental Health Supervisors" for a county health department are not created by statute. *See Murray v. Cty. of Person*, 191 N.C. App. 575, 580, 664 S.E.2d 58, 61-62 (2008), *disc. rev. denied*, 363 N.C. 129, 673 S.E.2d 360 (2009); *Block v. Cty. of Person*, 141 N.C. App. 273, 281-82, 540 S.E.2d 415, 421-22 (2000). However, whether an "Environmental Health Administrator" is a position created by statute is a question of first impression.

¶ 30    Hopper points to N.C.G.S. § 130A-41(b)(12) and N.C.G.S. § 130A-227(a) in arguing his position is created by statute. *See* N.C.G.S. §§ 130A-41(b)(12), 130A-227(a) (2019). N.C.G.S. § 130A-41(b)(12) authorizes the powers and duties of local health directors, including the power and duty "[t]o employ and dismiss employees of the local health department in accordance with [N.C.G.S. Chapter 126]" and N.C.G.S.

§ 130A-227(a) authorizes the Department of Health and Human Services to "employ environmental engineers, sanitarians, soil scientists and other scientific personnel necessary to carry out the sanitation provisions of this Chapter and the rules of the Commission." N.C.G.S. §§ 130A-41(b)(12), 130A-227(a) (2019). These statutes authorize and regulate the hiring of certain employees, but do not operate, either on their own or in conjunction, to create the position of Environmental Health Administrator. There is no "clear statutory basis" for the position of Environmental Health Administrator. *Baker*, 224 N.C. App. at 428, 737 S.E.2d at 148.

¶ 31 However, "[o]ur case law makes clear that where a statute expressly creates the authority to delegate a duty, a person or organization who is delegated and performs the duty on behalf of the person or organization in whom the statute vests the authority to delegate passes the first [] *Isenhour* factor." *McCullers v. Lewis*, 265 N.C. App. 216, 223, 828 S.E.2d 524, 532 (2019); *see, e.g., Baker*, 224 N.C. App. at 428-30, 737 S.E.2d at 148-49 (emphasis in original) (holding where the relevant statutes (1) gave the constitutionally-created Sheriff the duty to take "care and custody of the jail" and (2) provided the sheriff with authority to "appoint a deputy *or employ others to assist him in performing his official duties*[,]" assistant jailers "are delegated [a] statutory duty . . . by the [S]heriff – a position created by our Constitution" satisfying the first *Isenhour* factor); *Hobbs v. N.C. Dep't of Human Res.,* 135 N.C. App. 412, 421-22, 520 S.E.2d 595, 602 (1999) (holding because the relevant statute gave the director

of social services the authority to "delegate to one or more members of his staff the authority to act as his representative[,]" social workers were acting as public officials for public official immunity purposes); *Cherry v. Harris*, 110 N.C. App. 478, 480-81, 429 S.E.2d 771, 772-73 (holding a forensic pathologist who conducted an autopsy and prepared reports in response to an official request by a county medical examiner satisfied the first factor of the *Isenhour* test because the medical examiner, a position created by statute, "had the statutory authority pursuant to [N.C.G.S.] § 130A-389(a) [] to order [] an autopsy be performed by a pathologist . . . designated by the Chief Medical Examiner), *disc. rev. denied*, 335 N.C. 171, 436 S.E.2d 371 (1993). In *Baker*, *Hobbs*, and *Cherry*, we pointed directly to a statute that authorized a constitutionally or statutorily created position or organization to delegate its statutory authority to another individual.

¶ 32      The Clines argue N.C.G.S. § 130A-41(b)(12) lacks language to indicate there is a statutory delegation of authority to sufficiently pass the first *Isenhour* factor. Before the trial court, Hopper argued there is "delegation of the authority to enforce the commission for health services sanitation rules as required by the administrative code," and this "delegation of authority to do the very acts of which [the Clines] complained" is sufficient to pass the first *Isenhour* factor. The only support for Hopper's argument before the trial court was a letter dated 8 May 1995 from the

North Carolina Department of Environment, Health and Natural Resources

("DEHNR") stating:

> Attached is the authorization/identification card for Mr.
> Norman Curtis Hopper, Environmental Health Specialist,
> employed by [Gaston County Health Department]. Please
> give the card to Mr. Hopper with instructions that it must
> be available at all times for identification during official
> business.
>
> The authorization for On-Site Wastewater delegates
> authority to administer and enforce the laws in [N.C.G.S.]
> Chapter 130A, Article 11 and the rules promulgated
> thereunder in the North Carolina Administrative Code
> Title 15A- Subchapter 18A.1900 et seq.
>
> Rules governing the "Delegation of Authority to Enforce
> Commission for Health Services' Sanitation Rules" require,
> in 15A NCAC 18A.2302(1), that individuals who are
> delegated authority be employed by a local health
> department. In the event that Mr. Hopper is no longer
> employed by [Gaston County Health Department],
> delegation of authority to enforce state laws and rules in
> the Gaston County is immediately suspended. At that
> time, the authorization/identification card must be
> forwarded to this office.

However, in May 1995, Hopper was employed in the position of Environmental

Health Specialist,[5] a role we have previously held to be a public employee. *See Block*,

141 N.C. App. at 282, 540 S.E.2d at 421-22 (citations and marks omitted) ("Our courts

---

[5] Hopper was employed as an "[E]nvironmental [H]ealth [S]pecialist [I]ntern" in 1990 with Gaston County. In 1992, his role changed to "[E]nvironmental [H]ealth [S]pecialist." Around 1999 or 2000, Hopper became a "supervisor/coordinator," and then in 2002 became "the [D]epartment [A]dministrator for [E]nvironmental [H]ealth," his current role.

have held that a supervisor of the Department of Social Services is a public employee. Similarly, a supervisor for the Health Department is a public employee, as is a specialist, who is a subordinate of the supervisor. As such, these employees may be held personally liable for the negligent performance of their duties that proximately caused foreseeable injury."). The forecasted evidence, to wit Hopper's letter from DEHNR regarding his position as Environmental Health Specialist, does not create a genuine issue of material fact as to Hopper's ability to invoke public official's immunity. As Hopper made no other delegation argument before the trial court, we hold there is no statutory authorization for the delegation of a duty in his position as Environmental Health Administrator.

¶ 33        Since the statutes cited by Hopper neither provide a clear statutory basis for the position of Environmental Health Administrator nor allow a person or organization created by statute to delegate any statutory duties to Environmental Health Administrators, Hopper has failed to establish his position was created by statute. As the first factor is not met, we need not reach the other two *Isenhour* factors. *See Leonard v. Bell*, 254 N.C. App. 694, 705, 803 S.E.2d 445, 453 (2017) ("Because we hold that [the] defendants' positions are not created by statute, we need not address the remaining elements to reach the conclusion that [the] defendants are not public officials entitled to immunity."). The trial court erred in granting summary

judgment to Hopper, in his individual capacity, on the basis of public official's immunity and we reverse.

## **CONCLUSION**

The Clines did not meet their burden of production to show Gaston County and Hopper, in his official capacity, waived governmental immunity through the purchase of liability insurance. The trial court properly granted Appellees' motion for summary judgment in regards to Gaston County and Hopper, in his official capacity.

Hopper is a public employee and not a public official. His position as Environmental Health Administrator was not created by statute and the only argument he advanced at the trial court as to delegation fails based on our decision in *Block*. As such, he is not protected by public official's immunity and the trial court erred in granting summary judgment to Hopper, in his individual capacity, on the basis of public official's immunity.

AFFIRMED IN PART; REVERSED IN PART.

Judges DILLON and ARROWOOD concur.